**Caryl CHESSMAN, Petitioner,**

v.

**Harley O. TEETS, Warden, California State Penitentiary, San Quentin, California, Respondent.**

No. 34375.

United States District Court
N. D. California, S. D.

Jan. 31, 1956.

George T. Davis, San Francisco, Cal., Rosalie Asher, Sacramento, Cal., for petitioner.

William M. Bennett, Arlo Smith, Deputy Attys. Gen., of the State of California, for respondent.

GOODMAN, District Judge.

The petition for a writ of habeas corpus herein was denied by this Court on January 4, 1955 upon the ground that, as a matter of law, it did not tender a federal question. Application of Chessman, 128 F.Supp. 600. The Court of Appeal of this Circuit, en banc, affirmed, 221 F.2d 276. On October 17, 1955, the Supreme Court granted certiorari, reversed the judgment of the Court of Appeal and remanded the cause here for a hearing. 350 U.S. 3, 76 S.Ct. 34. On November 30, 1955, pursuant to the mandate of the Supreme Court, and, upon application of counsel for petitioner, we issued a writ of habeas corpus requiring respondent to produce petitioner for hearing on December 8, 1955. On said last mentioned date petitioner, being produced in Court, the Court set the hearing ordered by the Supreme Court for January 9, 1956. Thereafter, upon request of petitioner, the Court continued the date of the hearing to January 10, 1956; thereafter, at the request of petitioner for a further continuance, the Court set the hearing for

January 16, 1956. The hearing commenced on January 16, 1956 and continued through January 17, 18, 19, 20, 23 and January 24, 1956; on January 25, 1956, without argument, the cause was submitted for decision.

The petitioner was represented by attorneys George T. Davis and Rosalie Asher. The record shows that petitioner also had the services and aid of an investigator and a shorthand reporter. The following witnesses were produced on behalf of petitioner and testified:

1. Paul De Noia, Deputy Clerk California Supreme Court.

2. Cecil J. Luskin, Deputy Clerk Superior Court Los Angeles County.

3. George S. Jones, Clerk of Superior Court Marin County.

4. Caryl Chessman, petitioner.

5. Stanley Fraser, Official Court Reporter.

6. J. Miller Leavy, Deputy District Attorney, Los Angeles County.

7. Honorable Charles W. Fricke, Judge Superior Court Los Angeles County.

22 exhibits were offered by petitioner and 20 exhibits admitted in evidence. The respondent produced three witnesses

1. Paul H. Burdick, Retired Superior Court Reporter.

2. Nana L. Bull, member of jury Chessman trial.

3. Mary E. Graves, member of jury Chessman trial.

and offered 9 exhibits, 8 of which were admitted in evidence. The transcript is 923 pages in length. The exhibits consist of the record in all the Chessman proceedings in the Superior Court of Los Angeles, the Superior Court of Marin County, The Supreme Court of the State of California and also the records of the Los Angeles Board of Supervisors, the Los Angeles County Counsel, and the Secretary of the Superior Court of Los Angeles County, with respect to the appeal transcript in Chessman's case.

The record shows that attorney George T. Davis was retained by petitioner to represent him in this proceeding on October 26, 1955. By written contract, his compensation was fixed at $10,000 in cash, plus a biography of George T. Davis to be written by petitioner for said George T. Davis within one year, the value of which was agreed to be $40,000.

From time to time, commencing with December 8, 1955, upon the request of petitioner and his counsel, the Court entered orders directing the respondent to provide various facilities for consultation between petitioner and his counsel, daily from 9 a. m. to 6 p. m., at San Quentin State Prison, where petitioner was, and is, confined awaiting execution of the death penalty. Upon further complaint by petitioner as to the inadequacy of the facilities for consultation, the Court of its own motion, arranged with the Federal Director of Prisons to remove the petitioner, pending the hearing, to Alcatraz Prison, where facilities more to the liking of petitioner could be provided; petitioner failed to avail himself of the quarters as offered. The petitioner, apparently being dissatisfied with the efforts of the Court in this regard, filed an affidavit and application to disqualify the Court on the ground of personal bias and prejudice, pursuant to 28 U.S.C. § 144. Disqualification was denied upon the ground that the petition on its face, as a matter of law, failed to set forth any facts showing personal bias or prejudice on the part of the Court. Upon the commencement of the hearing and upon his application, the Court allowed the petitioner to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. In addition, the Court arranged with the Director of the Administrative Office of the United States Courts, for the United States to pay the cost of a daily transcript of the testimony to be furnished to the petitioner and his attorney.

It is appropriate here to record the many collateral proceedings and matters initiated by petitioner from December

8, 1955 to and through the hearings themselves. Not because of any materiality to the resolution of the factual issue which the Court has determined, but to demonstrate the provisions made to afford petitioner a full and adequate hearing of the factual issues. A complete list of the various applications and motions made by or on behalf of the petitioner, and the Court's rulings thereon, follows as Appendix A.

The petitioner, in addition to alleging that the prosecuting attorney and substitute reporter selected by him had by corrupt arrangement prepared a fraudulent transcript on appeal, also alleged that he was denied due process because of alleged irregularities in the procedures followed in the settlement of the transcript on appeal, such as, denial of demand to be personally present at the various hearings in the Superior Court with respect to the settlement and certification of the transcript on appeal. All such issues have heretofore been determined adversely to petitioner, as a matter of law, by the Supreme Court of California,[1] by this Court,[2] and by the Court of Appeal on review.[3] Certiorari was denied by the Supreme Court of the United States.[4]

 Required now to be considered by this Court, under the mandate of the Supreme Court, 350 U.S. 3, 76 S.Ct. 34, is the factual issue as to whether the prosecuting attorney and the substitute reporter selected by him, by corrupt arrangement, prepared a fraudulent transcript. Such a fraud, if perpetrated, the Supreme Court has held to be a denial of due process of law in violation of the 14th Amendment. 350 U.S. 3, 76 S.Ct. 34.

The undisputed evidence discloses, in summary, the following proceedings in connection with the preparation and settlement of the transcript on the automatic appeal from the judgment and sentence of the trial Court:

After the verdict of the jury and prior to motion for new trial and imposition of sentence, Perry, the court reporter who had reported the trial proceedings, suddenly died. He had evidenced no signs of debility or ineffectiveness prior to his death. At the time of his death he had already transcribed and typed, or dictated into dictaphone cylinders, 646 pages of the typewritten transcript of the evidence. The proceedings with relation to the motion for new trial and judgment were reported by another court reporter, one Person. No claim of any irregularity or incorrectness in his transcript of such proceedings is made.

At the hearing on motion for new trial the trial judge directed the Clerk of the Criminal Court to request the Board of Supervisors of Los Angeles County to provide compensation for the services of a reporter to transcribe the balance of the record not transcribed by the dead reporter so as to complete the record required under the automatic appeal provisions of California Law. Thereafter, the trial judge directed J. Miller Leavy, the deputy district attorney who had prosecuted the Chessman case, to secure the shorthand notes of the Chessman trial from the office of the deceased reporter and to locate a reporter who could transcribe them. Leavy obtained the notes, and, after consultation with several of the official reporters of the Superior Court, turned the notes over to one of them, Stanley Fraser. After study of the notes, Fraser stated that he would be able to transcribe them.

1. People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, 19 A.L.R.2d 1084; Id., 38 Cal. 2d 166, 238 P.2d 1001.

2. N.D.Cal. #30965, Nov. 6, 1951; N.D. Cal. #31600, June 9, 1952; In re Chessman, D.C., 128 F.Supp. 600.

3. Chessman v. People, 9 Cir., 205 F.2d 128; Chessman v. Teets, 9 Cir., 221 F. 2d 276.

4. Chessman v. People of State of California, 343 U.S. 915, 72 S.Ct. 650, 96 L.Ed. 1330; Id., 346 U.S. 916, 74 S.Ct. 278, 98 L.Ed. 412; Id., 348 U.S. 864, 75 S.Ct. 85, 99 L.Ed. 681.

In the meantime, the Secretary of the Superior Court had requested an opinion from the Los Angeles County Counsel as to the proper method of implementing the trial judge's direction that the Board of Supervisors be requested to provide compensation for the transcription of the notes of the deceased reporter. The County Counsel recommended that the trial judge make a formal order directing the cost of such transcription to be paid from the County Treasury. Such an order was made by the trial judge on July 20, 1948. Mr. Leavy, at the request of the Secretary of the Superior Court, then consulted with several of the official court reporters as to the equitable rate of compensation for this transcription, and reported that the consensus of opinion was that an equitable rate would be three times the usual rate. The Secretary of the Superior Court then requested the Board of Supervisors to enter into a contract for the transcription of the notes, and the Chief Administrative Officer of Los Angeles County recommended to the Board that they enter into such a contract with Stanley Fraser at the suggested rate of three times the usual rate. Accordingly, the Board on August 3, 1948 directed the County Counsel to prepare the necessary form of contract. Shortly thereafter, the Chief Administrative Officer of Los Angeles County notified the Board that he had been informed by the County Public Defender that at least two other reporters were called upon to transcribe the deceased reporter's notes and could not do so. He thereafter recommended that the Board instruct the District Attorney to determine whether another reporter could transcribe the notes. The Board directed the District Attorney to make a further investigation. Mr. Leavy reported to the Board, on behalf of the District Attorney, that during the course of his efforts to locate a reporter to transcribe the notes, he had found that reporters, other than Mr. Fraser, were capable of reading the notes. The Board thereafter, on September 7, 1948 entered into a contract with Stanley Fraser for the transcription of the notes at the rate recommended by the Chief Administrative Officer.

At the hearing, it was pointed out that Fraser was an uncle of assistant district attorney Leavy's wife. However, this remote family relationship has no bearing whatsoever upon the factual issues here. Fraser had been a close associate of Perry for many years. He had had offices with him. They had been close personal friends. They had frequently read each other's notes. Both used substantially the same shorthand system. These were the considerations that prompted the employment of Fraser.

After several months' work, Fraser completed the transcript. To assist himself in the transcription of Perry's notes, he had available and used the transcribed portion, which Perry had already made, covering 646 pages, and approximately 100 pages of the trial judge's longhand notes of the proceedings at the trial. As well, he had available to him the court records, the recollection of the district attorney on any doubtful matters and also he consulted with two police officers who had testified at the trial, regarding their testimony.

When completed, the transcript was furnished to the defendant (petitioner here) who, at his own specific request, acted throughout as his own counsel. The defendant (petitioner here) filed a document containing suggestions, objections and corrections as to the record. It comprised 26 pages and included approximately 200 separate items. Each of the items was considered and ruled upon by the trial judge. Augmentations to and corrections of the record were made and finally the trial judge certified that the record as engrossed was a fair and just recordation of the trial proceedings. The trial judge so testified at the hearing as well as having previously so certified in writing. The record was reviewed by the Supreme Court of California upon various motions made there by petitioner in propria per-

sona and the Supreme Court determined that, except as to some changes and additions which it ordered made to the record, the transcript was adequate to permit the Supreme Court to ascertain whether or not there had been a fair trial or any miscarriage of justice. People v. Chessman, 35 Cal.2d 455, 218 P.2d 769, 19 A.L.R.2d 1084.

From the beginning, petitioner initiated and participated in many proceedings with respect to the settlement of the transcript. At the time of the hearing of his appeal from the judgment and sentence, he first asserted general and non-specific charges of fraud in the preparation of the transcript. But it should be noted that it was not until July of 1954 that he, for the first time, almost six years after sentence was imposed and three years after the sentence had been affirmed on appeal, raised and tendered the claim that the transcript omitted alleged prejudicial instructions of the trial judge as the result of a corrupt and fraudulent arrangement between the district attorney and the reporter. That this claim is a complete fabrication may be fairly inferred from the manner and time of its assertion.

There is not a scintilla of verity in the allegations made in the petition. The evidence not only does not disclose the existence of a single fact from which even an inference of fraud or impropriety may be drawn, but clearly and persuasively shows that the judge, the district attorney and the reporter diligently endeavored to the best of their ability and to the extent of their ingenuity to complete a fair and proper record and transcript for the use of the Supreme Court of California upon Chessman's automatic appeal.

### Findings of Fact.

1. Petitioner is lawfully confined by respondent pursuant to commitments and warrants of execution from the Superior Court of Los Angeles County.

2. Deputy District Attorney Leavy did not engage in any fraudulent or unlawful conduct in the preparation of the transcript on appeal in petitioner's case in Los Angeles Superior Court. Nor did Leavy knowingly or otherwise make any misrepresentations to the trial judge for the purpose of inducing the trial judge to certify or settle or allow or approve the said transcript.

3. Shorthand reporter Perry was not unable to properly record the trial proceedings in Chessman's case, but, on the contrary, was fully competent and physically able at all times to record such proceedings.

4. It is not true that reporter Fraser was a discredited reporter from the State of Washington. It is not true that Fraser had been discharged at any time from his position as official court reporter of Los Angeles County because of incompetency or drunkenness or for any other cause.

5. It is not true that Fraser was incompetent to transcribe Perry's notes because of drunkenness or for any other cause. On the contrary, Fraser was exceptionally and specially competent to transcribe Perry's notes and did so with fairness and competently.

6. It is not true that Fraser was inebriated or drunk or under the influence of alcohol or mentally or morally incapable of such work, at any of the times he was engaged in the work of transcribing Perry's notes.

7. Leavy made no misrepresentations of any kind to the trial judge as to the accuracy or correctness of the transcript as prepared by Fraser.

8. The instructions given by the trial judge to the jury on May 21, 1948 were correctly and accurately reported in the transcript as prepared by Fraser. The trial judge did not instruct the jury at that time as alleged and testified to by petitioner. Petitioner's statements in this regard are false and perjurious.

9. The allegation in the petition that the trial judge stated to the jury on May 21, when instructing them, that "this defendant is one of the worse criminals I have had in my court" is false and perjurious. The trial judge made

no such statement. Hence the transcript was correct in not including such statement.

10. It is not true that the transcript prepared by Fraser had been materially or otherwise altered through the connivance of said Fraser and Leavy, and it is not true that there was any connivance at all between the two men.

11. Neither Fraser nor Leavy nor the two of them together in any respect or at any time had any corrupt arrangement to prepare a fraudulent transcript. Neither of them at any time engaged in any fraud or corruption of any kind in the preparation or certification of the transcript of the record in Chessman's case. On the contrary, the court finds that not only Fraser and Leavy, but the trial judge as well, endeavored to and did arrange for and completed the transcript in Chessman's case in the best of good faith and with diligence and fairness, so that a fair and correct record could be provided the Supreme Court of California upon Chessman's automatic appeal to that court.

## Conclusion of Law

Petitioner has failed to sustain the allegations of his petition and the writ should be discharged.

## Judgment

It is Ordered, Adjudged and Decreed that the writ of habeas corpus heretofore issued herein be and the same is hereby discharged and the petitioner is remanded to the custody of respondent.

The stay of execution heretofore granted is hereby vacated and terminated.

## Appendix A.

1. Dec. 8, 1955

(a) Motion of petitioner to transfer his custody to U. S. Marshal. Motion denied but Court ordered respondent to allow consultation between petitioner and his counsel on every day to date of hearing between 9 a. m. and 6 p. m. and to provide facilities therefor for the "private and full conduct of such consultations." Note: the Court later pointed out that petitioner was legally in the custody of the U. S. Marshal at all times after the issuance of the writ and that place of custody was for the marshal to determine.

(b) Court ordered the State Attorney General, Counsel for respondent, to deliver Perry's note books to Clerk of Court to be impounded for 10 days examination by petitioner. Court ordered Clerk, if requested by petitioner, to protostat the notes for petitioner at petitioner's cost.

2. Dec. 15, 1955

Second motion to transfer custody of petitioner or to further implement order of Dec. 8th filed.

3. Dec. 16, 1955

(a) Court ordered Perry notes, now in possession of Clerk to be open to inspection and photostating by persons authorized by petitioner's counsel.

(b) At request of petitioner, date of hearing continued to Jan. 10, 1956.

4. Dec. 21, 1955

After hearing, Court amended order of Dec. 8, 1955 providing that experts, investigators and witnesses could, when designated by petitioner's counsel, consult with petitioner and also that respondent should not examine documents used in conferences.

5. Dec. 22, 1955 After hearing, application for further change of custody denied.

6. Dec. 29, 1955 Affidavit for disqualification filed.

7. Dec. 30, 1955 (a) Order declining disqualification filed.

 (b) Motion for continuance granted to Jan. 16, 1956.

8. Jan. 4, 1956 (a) Petitioner filed document consenting to his transfer to Alcatraz Prison under specified conditions.

 (b) Court denied transfer because of conditions imposed by petitioner.

9. Jan. 7, 1956 (a) Motion to join State of California as party respondent denied.

 (b) Motion to vacate order denying transfer to Alcatraz. Not pressed or decided.

 (c) Motion to proceed in forma pauperis. Granted Jan. 10, 1956.

10. Jan. 9, 1956 (a) Motion for judgment on mandate for payment of $100 costs. Paid by respondent without the issuance of execution.

 (b) Motion of petitioner that U. S. photostat Perry's notes without cost for petitioner. Denied Jan. 10, 1956.

 (c) Motion for immediate production of certain records. Granted in part and denied in part, Jan. 10, 1956.

 (d) Motion of petitioner to issue subpoenas to witnesses in Los Angeles County. Denied because of lack of power, but without prejudice to renewal at hearing.

11. Jan. 10, 1956 Motion for further continuance denied upon the ground that counsel had ample time to prepare.

12. Jan. 16, 1956 (a) Ordered that daily transcript of proceedings be furnished the petitioner at the cost of the United States.

 (b) Motion that the United States furnish photostats of Perry's notes to petitioner denied, since petitioner had access thereto, since Dec. 16, 1955, and also because of lack of power.

13. Jan. 19, 1956 (4th day of hearing) Petitioner's motions to issue subpoenas to take depositions denied for lack of any good cause.

14. Jan. 24, 1956 (a) (7th day of hearing) Petitioner moves for continuance of hearing for two weeks to see if he can obtain other evidence. Denied as being without cause.

 (b) Petitioner moves for declaratory judgment adjudging that respondent must produce stories or manuscripts written by petitioner. Denied.