**In the Matter of the Application of Caryl CHESSMAN, for a Writ of Habeas Corpus.**

**No. 14621.**

United States Court of Appeals, Ninth Circuit.

Jan. 11, 1955.

Caryl Chessman in pro. per., Jerome Duffy, Berwyn Rice, San Rafael, Cal., for petitioner.

Edmund G. Brown, Atty. Gen. of California, for respondent.

DENMAN, Chief Judge.

Chessman, convicted of kidnapping and attempted raping of a young woman in violation of Section 209 of the Penal Code of California [1] and other crimes is sentenced to be executed by gas on Friday, January 14, 1955.[2] He seeks my certificate of probable cause, required by 28 U.S.C. § 2253, for an appeal, which he has attempted to have noticed below, from a decision of the United States District Court for the Northern District of California in a habeas corpus proceeding, 128 F.Supp. 600.[3] That court, without issuing the writ or an order to show cause, dismissed on the ground that the application failed to state a cause of ac-

1. § 209. [Punishment of kidnaping for ransom, reward, etc.] Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or robbery or to exact from relatives or friends of such person any money or valuable thing, or who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the State prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm. [Added by Stats. 1901, p. 98; Am.Stats.1933, p. 2617.]

2. On his trial Chessman was shown to be a felon with many prior convictions and in a frontier community with its lawlessness, quite likely he would have been executed in short proceedings under "Judge Lynch." However, it is an outstanding principle of our American law that no person, however vile, is denied a legal right for that reason.

3. Chessman has sought writs of habeas corpus in several proceedings in the California and Federal Courts, always unsuccessfully. Such successive proceedings, some considered on their merits, are made possible under the principle that decisions in habeas corpus cases are not res judicata. This right to repetitious hearings for State prisoners recently existed for those in Federal penitentiaries. It was limited by 28 U.S.C. § 2255, making res judicata decisions on the prisoners' rights. Congress has the power to enact similar legislation for State prisoners.

tion, relying on our opinion in Chessman v. People, 9 Cir., 205 F.2d 128, later discussed.

■ Under 28 U.S.C. § 2253, to have a probable cause for appeal there must be found a justiciable question for the appellate court to decide. Obviously, if such a question exist, the certificate must be made even though, as presently advised, I might now decide it adversely to Chessman.

The application for the writ in the district court was in all essential respects the same as a petition for the writ in the Supreme Court of California, also so denied 274 P.2d 645. Certiorari was sought in the United States Supreme Court and there denied with the following language, "Without prejudice to an application for à writ of habeas corpus, in an appropriate United States District Court." 348 U.S. 864, 75 S.Ct. 85.

These words are highly significant, since from the petition and briefs in the certiorari proceeding the United States Supreme Court knew of the character of the petition to the California supreme court. The denying of the petition for certiorari would not have suggested the proceeding in the district court, if its allegations did not present what the Supreme Court considered a justiciable question. It is my opinion that what the United States Supreme Court had in mind concerning the allegations of the denied petition is what follows.

■ The jury brought in a verdict of guilty requiring the death penalty, on which the court rendered its sentence. The court reporter, who was ill when reporting the case, died before he had transcribed the testimony and instructions on which the verdict was rendered and attached his certificate as to its correctness, required by Rule 35 of the California Rules on Criminal Appeals.

How important the California law regards this transcription and certification by the reporter is apparent from the fact that in *civil* cases the death of the reporter before his transcription and certification, gives the trial court the discretionary power to set aside the judgment and order a new trial. California Code of Civil Procedure, § 953e. By some quirk in California legislation this does not apply to criminal cases. However, it is obvious that if the reporter's transcript is so important as to give the court such power in a civil case, *a fortiori* it must have such importance in a criminal case in which, on the evidence to be transcribed, the accused is sentenced to death. Likewise its importance is emphasized by the California law making the appeal automatic from death sentences. California Penal Code, § 1239 (b).

What the trial court did was to hold a hearing in which a record was made up by the attempted transcription of the deceased reporter's shorthand notes by a witness, another shorthand reporter, and the testimony of another witness, the attorney who had prosecuted Chessman, this testimony being required because a very considerable part of the shorthand notes were not intelligible to the reporter-witness.

Chessman's petition alleges that he, who had conducted his own defense, was refused permission to attend the hearing on which the transcript for his appeal was so litigated. Nor did any attorney become of record to represent him.

The transcript was typed in over two thousand pages and it is apparent that had Chessman participated in the contest so litigating the transcript, his memory as to what happened better would have been reawakened as page by page it was reconstructed. His subsequent contemplation while confined in the penitentiary of a record so prepared is no substitute for his participancy. Chessman contends that the record does not disclose certain of the statements to the jury made by the prosecuting attorney who so became a witness in its composition, sufficiently prejudicial to amount to a violation of due process, approval of the court of the prosecuting attorney's wrongful statements and the court's instruction to the jury requiring them to inflict the death penalty, though

under § 209 of the California Penal Code they had their choice between that and life imprisonment without parole if they found first degree kidnapping.

With regard to the claimed wrongful instruction, the attorney for the Warden strongly contends that Chessman in earlier applications for the writ failed to rely on its absence from the transcript, and that he has husbanded this ground of attack and hence is not entitled to urge it now. Of this contention, in a case where a fourth application for the writ was under consideration, the Supreme Court held in Price v. Johnston, 334 U.S. 266, 291, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356:

"* * * even if it is found that petitioner did have prior knowledge of all the facts concerning the allegation in question, it does not necessarily follow that the fourth petition should be dismissed without further opportunity to amend the pleadings or without holding a hearing. If called upon, petitioner may be able to present adequate reasons for not making the allegation earlier. * * * And if for some justifiable reason he was previously unable to assert his rights or was unaware of the significance of relevant facts, it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief."

If the above allegations of the application be true they clearly present a justiciable question whether the due process provisions of the Fourteenth Amendment have been violated. Article I, § 13 of the California Constitution provides:

"Sec. 13. In criminal prosecutions, *in any court whatever*, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend, in person and with counsel. * * *" (Emphasis added.)

Whether the proceeding before the trial court to establish the record is a lower court action, since the record is usable on a motion for a new trial, or appellate action, is also a justiciable question. If it is of the latter character the Supreme Court has held that though a state is not required to give a convicted man the right of appeal, when it does so the appellant must be accorded due process in the course of the appellate procedure. Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644; Frank v. Mangum, 237 U.S. 309, 327, 35 S.Ct. 582, 59 L.Ed. 969 and cases cited. The district court denied the application, relying upon our decision in Chessman v. People, 205 F.2d 128 as establishing the law of the circuit to the contrary. It is a justiciable question whether Cole v. State of Arkansas is controlling.[4]

I therefore certify that Chessman has a probable cause for appeal and order the appellee Warden of the California State Penitentiary at San Quentin not to execute Chessman on Friday, January 14, 1955, and to stay his execution until the further order of the Court of Appeals for the Ninth Circuit.

---

4. Chessman's counsel, to show that the proceeding is not instituted for mere delay, have offered his stipulation to have the appeal heard on a shortened time for briefing, to be in typewriting, and to be filed in ten days.