# CHESSMAN *v.* TEETS, WARDEN.

No. 893.   Argued May 13, 1957.—Decided June 10, 1957.

*George T. Davis* argued the cause for petitioner. With him on the brief was *Rosalie S. Asher.*

*William M. Bennett,* Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *Edmund G. Brown,* Attorney General, *Arlo E. Smith,* Deputy Attorney General, and *Clarence A. Linn,* Assistant Attorney General.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Our writ of certiorari in this case was limited to the following question:

> "whether, in the circumstances of this case, the state court proceedings to settle the trial transcript, upon which petitioner's automatic appeal from his conviction was necessarily heard by the Supreme Court of the State of California, in which trial court proceedings petitioner allegedly was not represented in person or by counsel designated by the state court in his behalf, resulted in denying petitioner due process of law, within the meaning of the Fourteenth Amendment to the Constitution of the United States." 353 U. S. 928.

We believe that a mere statement of the facts in this long-drawn-out criminal litigation, material to the issue now before us, will suffice to show why we have reached the conclusion that the judgment of the Court of Appeals, affirming by a divided court [1] discharge of the writ of

---

[1] 239 F. 2d 205. Chief Judge Denman dissented.

158

habeas corpus herein, must be vacated, and the case remanded for further proceedings.

In May 1948, petitioner, following a trial by jury in the Superior Court of Los Angeles County, was convicted of a series of felonies under a multi-count indictment, and was sentenced to death upon two counts charging him with kidnaping for the purpose of robbery, with infliction of bodily harm, in violation of § 209 of the California Penal Code. In capital cases California provides that "an appeal is automatically taken by the defendant without any action by him or his counsel," [2] and that in such cases "the entire record of the action shall be prepared." [3] The Supreme Court of the State of California affirmed petitioner's conviction by a divided court. 38 Cal. 2d 166, 238 P. 2d 1001.

At the trial petitioner insisted upon defending himself, and repeatedly refused the trial court's offer of counsel, although he did have at his disposal the services of a deputy public defender, who acted as his "legal adviser" and was present at the counsel table throughout the trial. About a month after the conclusion of the trial, the official court reporter of the trial proceedings suddenly died, having at that time completed the dictation into a recording machine of what later turned out to be 646 out of 1,810 pages of the trial transcript. Following the denial of petitioner's motion in the Superior Court for a new trial,[4] there ensued the preparation and settlement of the trial transcript constituting the appellate record upon

---

[2] West's Ann. Cal. Codes, Penal Code, § 1239 (b).

[3] California Rules on Appeal, Rule 33 (c), 36 Cal. 2d 28.

[4] Where the making of a transcript of a *civil* trial becomes impossible by reason of the death or disability of the court reporter, the California statutes empower the trial judge to set aside the judgment and order a new trial. West's Ann. Cal. Codes, Code Civ. Proc., § 953e. The California Penal Code, however, contains no comparable provision.

which the California Supreme Court subsequently heard petitioner's appeal. It is the circumstances under which this transcript was prepared and settled that give rise to the issue now confronting us.

At the instance of the deputy district attorney in charge of the case, and with the approval of the trial judge, one Stanley Fraser, a court reporter and former colleague of the deceased reporter, Perry, was employed in September 1948 to transcribe the uncompleted portion of Perry's shorthand notes, amounting to 1,164 pages as finally transcribed. In November 1948 petitioner unsuccessfully sought to have the California Supreme Court halt the preparation of the transcript on the ground that Perry's notes could not be transcribed with reasonable accuracy.[5] Fraser accordingly went forward with the work, and was occupied with it over the next several months. A "rough" draft of the transcript was submitted to the trial judge in February 1949, but was not made available to petitioner, although he had requested that it be furnished him. After this draft had been gone over by the deputy district attorney, it was filed with the judge in final form on April 11, 1949, and a copy was then sent to the petitioner at San Quentin

---

[5] On September 16, 1948, when the appointment of the substitute stenographer was under consideration, the Chairman of the Executive Committee of the Los Angeles Superior Court Reporters' Association wrote the Board of Supervisors respecting the matter, as follows: "We believe the purported charge against the county is not only an exorbitant one per se, but will reflect further adverse publicity upon our group because we have serious doubts that any reporter will be able to furnish a usable transcript of said shorthand notes. Other reporters of our number have examined and studied Mr. Perry's notes and have reached the conclusion that many portions of the same will be found completely indecipherable because, toward the latter part of each court session, Mr. Perry's notes show his illness. We feel that this should be brought to your attention."

Prison. Thereafter petitioner sent to the trial judge a list of some 200 corrections to the transcript, and at the same time moved that

> "a hearing be ordered . . . to enable [petitioner] to determine actually the ability of Mr. Fraser to read Mr. Perry's notes, and to enable the [petitioner] to offer a showing this is not, and challenge it as, a usable transcript, and to enable [petitioner] to point out to the court the many inaccuracies and omissions in this transcript, to prove these inaccuracies and omissions, and for the court to determine these matters . . . ."

In these papers petitioner further stated that he had "not yet had the opportunity to confer with his legal advisor during the trial and consequently has been hesitant to offer error in certain instances until he has verified this error with his legal advisor."

Petitioner's motion was denied and the matter continued to proceed on an *ex parte* basis to final conclusion. At hearings held on June 1, 2, and 3, 1949, in which petitioner was not represented in person or by an attorney, the trial judge, after hearing Fraser's testimony as to the accuracy of his transcription and allowing some 80 of the corrections listed by petitioner, settled the record upon which petitioner's automatic appeal was to be heard. Thereafter petitioner made a motion in the California Supreme Court attacking the adequacy of these settlement proceedings, complaining, among other things, that he had not been permitted to appear at such proceedings. While that motion was pending, on August 18, 1949, a further hearing was held before the trial judge with reference to the settlement of the record, at which two witnesses were examined. Again, petitioner was not represented at this hearing either in person or by counsel. The

sufficiency of the record, as thus settled, was upheld by the California Supreme Court, first upon the motion just mentioned, 35 Cal. 2d 455, 218 P. 2d 769, and subsequently upon petitioner's appeal from his conviction, 38 Cal. 2d 166, 238 P. 2d 1001.

On October 17, 1955, this Court, reversing the Court of Appeals, remanded to the District Court for a hearing petitioner's application for a writ of habeas corpus, charging fraud in the preparation of the state court record, which had been summarily dismissed by the District Court. 350 U. S. 3.[6] This resulted in the judgment which is now before us. The District Court held that no fraud had been shown. The record of proceedings held before District Judge Goodman reveals the following additional facts as to the preparation of the state court record, none of which appear to be disputed by the State, which has been ably and conscientiously represented here: Fraser, the substitute reporter, was an uncle by marriage of the deputy district attorney in charge of this case, a fact of which neither the state trial court nor the appellate court was aware when it approved the transcript. In preparing the transcript, Fraser worked in close collaboration with the prosecutor, and also went over with two police officers, who testified for the State at the trial, his transcription of their testimony. The latter episodes were likewise unknown to the state courts when they approved the transcript. The testimony of one of these officers concerned petitioner's alleged confession, a subject of dispute at the trial, and petitioner's list of alleged inaccuracies, already mentioned, related to some of that testimony. It also appeared at this hearing that Fraser had destroyed the "rough" draft of his transcrip-

---

[6] On five previous occasions, this Court had denied petitions for certiorari filed by this petitioner. See note 13, *infra*.

tion which petitioner had sought to obtain during the settlement proceedings.[7]

Under the circumstances which have been summarized, we must hold that the *ex parte* settlement of this state court record violated petitioner's constitutional right to procedural due process. We think the petitioner was entitled to be represented throughout those proceedings either in person or by counsel. See *Powell* v. *Alabama*, 287 U. S. 45, 68; *Snyder* v. *Massachusetts*, 291 U. S. 97, 105; compare *Dowdell* v. *United States*, 221 U. S. 325, 331; *Schwab* v. *Berggren*, 143 U. S. 442, 449; see also *Cole* v. *Arkansas*, 333 U. S. 196, 201. If California chose to deny petitioner's request to appear in those proceedings *in propria persona*, it then became incumbent on the State to appoint counsel for him. Cf. *Powell* v. *Alabama, supra.* We cannot agree that petitioner's refusal to be represented by counsel at the trial constituted a waiver of his right to counsel at the settlement proceedings.[8] Moreover, it is at least doubtful whether, as a matter of due process, any such waiver would be effective to relieve the trial judge of a duty to appoint counsel for petitioner in connection with the settlement of this record, which was a necessary[9] and integral part

---

[7] Petitioner alleges that there were other relevant circumstances that should have been explored in the state settlement proceedings, but could not, he asserts, be proved in the hearings before Judge Goodman because of inability to secure records and the attendance of witnesses from outside the Northern District of California.

[8] The following statement of the petitioner at the trial, quoted in the State's present brief, hardly supports the claim of such a continuing waiver: "I wish to point out that it is my intention . . . at this time [to represent myself] and to continue to do so until such time as it is legally established that I am not qualified to do so, and that I will not accept a court-appointed attorney." *See Johnson* v. *Zerbst*, 304 U. S. 458, 464.

[9] See note 3, *supra.* In granting a certificate of probable cause for appeal to the Court of Appeals in the present proceeding, Chief

of the compulsory appeal provided by California in capital cases.[10] We need not decide that question, however, for the record fails to show that petitioner ever waived his right to counsel in connection with the settlement of the appellate record.

Nor can we regard the hearings before Judge Goodman, at which petitioner was both represented by counsel and personally present, as curing the lack of procedural due process in the state proceedings. Judge Goodman considered that our order of October 17, 1955, restricted the inquiry before him to the issue of whether the settlement of the state court record had been tainted by fraud, and that the accuracy of the record, as such, was not an issue in this proceeding.[11] We accept fully Judge Good-

---

Judge Denman noted: "How important the California law regards this transcription [of the trial proceedings] and certification [as to its correctness] by the reporter is apparent from the fact that in *civil* cases the death of the reporter before his transcription and certification, gives the trial court the discretionary power to set aside the judgment and order a new trial. California Code of Civil Procedure, § 953e. By some quirk in California legislation this does not apply to criminal cases. However, it is obvious that if the reporter's transcript is so important as to give the court such power in a civil case, *a fortiori* it must have such importance in a criminal case in which, on the evidence to be transcribed, the accused is sentenced to death. Likewise its importance is emphasized by the California law making the appeal automatic from death sentences. California Penal Code, § 1239 (b)." *In re Chessman,* 219 F. 2d 162, 164.

[10] See note 2, *supra.* Counsel for the petitioner, whose representations in this regard were not challenged by the State, informed us on the oral argument that the California Supreme Court customarily appoints counsel for the defendant when he is not otherwise represented by counsel on an automatic appeal.

[11] Judge Goodman did state, however, that he found petitioner's claims with respect to certain alleged prejudicial comments by the trial judge and the prosecutor to be without foundation. In the context of the limited issue with which the judge was here con-

man's finding that there was no fraud.  Even so, the fact remains that the petitioner has never had his day in court upon the controversial issues of fact and law involved in the settlement of the record upon which his conviction was affirmed.

By no means are we to be understood as saying that the state record has been shown to be inaccurate or incomplete.  All we hold is that, consistently with procedural due process, California's affirmance of petitioner's conviction upon a seriously disputed record, whose accuracy petitioner has had no voice in determining, cannot be allowed to stand.[12]  Without blinking the fact that the history of this case presents a sorry chapter in the annals of delays in the administration of criminal justice,[13] we cannot allow that circumstance to deter us from with-

---

cerned, we should be slow to regard these "findings" as possessing the same conclusiveness as if they had been made in a proceeding where the accuracy of the record, as such, was in issue.

[12] In view of our holding we cannot regard ourselves as concluded by the California Supreme Court's holdings that the record on which it acted was adequate as a matter of state law, and that, in any event, the inaccuracies then claimed by the petitioner would not have changed the result of his appeal.  Petitioner is entitled to have his conviction reviewed upon a record which has been settled in accordance with procedural due process.  Moreover, in holding as it did the state court was not aware of the facts later developed in hearings before Judge Goodman, see p. 161, *supra,* and we cannot know that those facts, and others that might be disclosed upon an adversary hearing focused squarely on the adequacy of the transcript, would not lead it to a different conclusion.

[13] Certainly this Court's previous denials of certiorari, 340 U. S. 840; 341 U. S. 929; 343 U. S. 915; 346 U. S. 916; 348 U. S. 864, do not foreclose us from now granting appropriate relief.  *Brown* v. *Allen,* 344 U. S. 443.  And it may be noted that it was not until the present proceedings in the District Court that the facts surrounding the settlement of the state court record were fully developed.

holding relief so clearly called for.[14]  On many occasions this Court has found it necessary to say that the requirements of the Due Process Clause of the Fourteenth · Amendment must be respected, no matter how heinous the crime in question and no matter how guilty an accused may ultimately be found to be after guilt has been established in accordance with the procedure demanded by the Constitution.  Evidently it also needs to be repeated that the overriding responsibility of this Court is to the Constitution of the United States, no matter how late it may be that a violation of the Constitution is found to exist.  This Court may not disregard the Constitution because an appeal in this case, as in others, has been made on the eve of execution.  We must be deaf to all suggestions that a valid appeal to the Constitution, even by a guilty man, comes too late, because courts, including this Court, were not earlier able to enforce what the Constitution demands.  The proponent before the Court is not the petitioner but the Constitution of the United States.

We have given careful consideration to the nature of the relief to be granted.  Petitioner's discharge is not to be ordered without affording California an opportunity to review his conviction upon a record the sufficiency of which has been litigated in proceedings satisfying the requirements of procedural due process.  Nor do we think it will do simply to remand the case to the District Court for an inquiry into the accuracy of the record upon which the California Supreme Court has already acted.  The task of affording petitioner a further review of his conviction upon a properly settled record is necessarily one for the state courts.  A federal court

---

[14] In *Mooney* v. *Holohan,* 294 U. S. 103, this Court did not hesitate to deal with a claimed denial of constitutional rights some 18 years after the petitioner had been convicted in a state court.  See also *Price* v. *Johnston,* 334 U. S. 266, 291.

is in no such position as the state courts are to determine what inaccuracies or other facts might be decisive under state law, particularly in view of the unusual character of the issues here involved. We conclude, therefore, that our proper course is to vacate the judgments of the Court of Appeals and the District Court and to remand the case to the District Court, with instructions to enter such orders as may be appropriate to allow California a reasonable time within which to take further proceedings not inconsistent with this opinion, failing which the petitioner shall be discharged. Cf. *Dowd* v. *United States*, 340 U. S. 206, 209–210.

*It is so ordered.*

MR. JUSTICE BURTON dissents because he believes that, upon consideration of all the circumstances of this case, the State of California has accorded to this petitioner due process of law within the meaning of the Constitution of the United States.

THE CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE CLARK concurs, dissenting.

I agree with the general principle announced by the Court. But I think it is misapplied here. Its application to the facts results, I fear, in a needless detour in a case already long-drawn-out by many appeals.[1]

I agree that in a case like this it matters not whether the petitioner is guilty or innocent, whether his complaint is timely or tardy. We should respect a man's constitutional right whenever or however it is presented to us. My difficulty here is not with any principle the Court

---

[1] See the Appendix to this opinion, *post*, p. 173.

announces. My dissent is based on the conviction that, in substance, the requirements of due process have been fully satisfied, that to require more is to exalt a technicality.

To say that the settlement in this case was *ex parte* is to be technically accurate. But it is not to state the whole story. Chessman was not present in court when the record was settled. Nor was he represented there by a lawyer, for he had over and again refused to allow a state-appointed lawyer to represent him. Chessman, however, played an active role in the process of the settlement of the record. The early draft prepared by Fraser, the new reporter, was sent to him for his suggestions. That Chessman went over this draft with a fine-tooth comb is evident from a reading of 200-odd corrections which he prepared. Of these proposals, about 80 were adopted and the rest refused.[2] Some of these proposals were specific, calling the court's attention to the use of a wrong word or phrase. Many were not specific. Some merely said that the reported version of certain testimony was garbled or incomplete or inaccurate. These generalized criticisms were never made specific. When Chessman made a generalized criticism, not once did he indicate such and such a fact had been omitted and prejudice shown, how an episode had been distorted and prejudice shown, where a date or name had been confused and prejudice shown, in what material respect an account was garbled and prejudice shown. Errors might have been made that were minor and inconsequential or major and fatal. From all that Chessman said to the California courts and from all he now says to this Court, it is impossible to conclude that there is any important, significant prejudicial error in the record on which the appeal in this case was taken.

---

[2] These include many that relate to the crime of burglary, of which he was acquitted.

Certainly we are pointed to none. Only vague assertions are made. Not once is a finger placed on a crucial issue of the case and a showing made or attempted that on that issue the facts were distorted to Chessman's prejudice. The conclusion is irresistible that Chessman is playing a game with the courts, stalling for time while the facts of the case grow cold.

Much time is given to the fact that Fraser, the substitute reporter, was related to the prosecutor and to the fact that Fraser, in reconstructing the record, talked with several witnesses for the State. Those circumstances conceivably could give rise to prejudice. Yet not once does Chessman say in what way the words of a witness on a critical issue are distorted so as to cause prejudice to Chessman's appeal. We know that there was no connivance between the prosecutor and the substitute reporter, for such was the finding of the District Court. *Chessman* v. *Teets*, 138 F. Supp. 761. And those findings are not subject to challenge, as we limited our grant of certiorari. What we are told—and all that we are told—is that Chessman should have been present in person or by an attorney at the hearing where the record was settled. Error is presumed because he was not present nor represented. But we should presume just the contrary, since Chessman had the opportunity to submit his version and indicate any errors in the reconstructed record and yet came up with no single omission, distortion, falsification, mistake, or error that could reasonably be said to be prejudicial.

A good illustration concerns the main issue on the appeal—the so-called confession obtained from Chessman. The confession was held admissible by the Supreme Court of California. *People* v. *Chessman,* 38 Cal. 2d 166, 178–182, 238 P. 2d 1001, 1008–1011. That was the main point in the petition for certiorari brought here

in the 1951 Term. It presented the problem of the effect of prolonged detention by the police on the voluntary character of the confession, the type of problem presented in *Haley* v. *Ohio,* 332 U. S. 596; *Watts* v. *Indiana,* 338 U. S. 49; *Turner* v. *Pennsylvania,* 338 U. S. 62; and *Harris* v. *South Carolina,* 338 U. S. 68. The Court denied certiorari. *Chessman* v. *California,* 343 U. S. 915.

In that petition Chessman claimed what he claims now—that he should have had a hearing on the settlement of the record. And he asserted that, if the transcript had been wholly accurate, it would be obvious that the confession was involuntary, while on the reconstructed record the question was more debatable.

The reconstructed record shows that Chessman was held incommunicado about 72 hours by the police before arraignment. During this time he was beaten to some extent. During this time he was interrogated off and on by the police. Only when he had made an oral confession was he arraigned. Not once in the earlier petition or in the present one or in any other motion paper did Chessman rebut the accuracy of the facts stated in the reconstructed record. He did not, for example, allege he was held longer than 72 hours. He did not say he was beaten more often or more severely than the reconstructed record shows. He did not assert that he was interrogated for longer periods or subjected to a greater ordeal than the reconstructed record states. Yet certainly he knows whether he was or whether he was not.

He advances no fact, no assertion, no evidence to show that on this critical issue in the case—and in my mind the most important one—the reconstructed record is distorted. I would presume accuracy, not error, in any record from any court. I would insist that this defendant make some showing of inaccuracy in a material way before I would send this record back for further reconstruction.

Only once during the long history of this case has Chessman pointed specifically to material inaccuracy or omission in the transcript. His charge of fraud, now set to rest by the findings of the District Court, was predicated upon a conspiracy to have expunged from the record certain specific remarks and instructions of the trial court. These omissions had not been mentioned in the long list of inaccuracies which Chessman submitted to the California courts. And, on these contentions, Chessman has now been given a hearing by the District Court, which found:

"8. The instructions given by the trial judge to the jury on May 21, 1948 were correctly and accurately reported in the transcript as prepared by Fraser. The trial judge did not instruct the jury at that time as alleged and testified to by petitioner. Petitioner's statements in this regard are false and perjurious.

"9. The allegation in the petition that the trial judge stated to the jury on May 21, when instructing them, that 'this defendant is one of the worse [sic] criminals I have had in my court' is false and perjurious. The trial judge made no such statement. Hence the transcript was correct in not including such statement." 138 F. Supp., at 765–766.

To repeat, this is not a case of a helpless man who was given no opportunity to participate in the settlement of the record. He did participate in a real, vivid sense of the term. A lawyer who entered the case by appointment at this late stage would be utterly helpless, for he would have no idea what went on at the trial. When it came to the settlement of the record, California did all that reasonably could be required by sending the reconstructed record to Chessman for criticism. His

specific criticisms were often accepted.[3] His general criticisms were not.[4] Since it was in his power to make the general criticisms specific, he was given that opportunity which due process of law requires. Yet he declined over and again to make the general criticisms specific, asking only that he be present at the hearing.

The habeas corpus jurisdiction of the federal courts has been greatly under fire in recent years. I for one would hate to see it abolished or greatly curtailed by Congress. It has done high service in the administration of justice. Not uncommonly a case that is here on certiorari from a state court presents only darkly or obliquely an important constitutional issue. Perhaps, as in *Massey* v. *Moore,* 348 U. S. 105, the issue could not be raised at the trial. Perhaps the trial lawyer failed to present it clearly. Perhaps only after the trial were the full facts known. Perhaps the issue was poorly focused in the trial court's charge. On habeas corpus the facts can be fully

---

[3] The trial judge resolved doubts in favor of the defendant. Thus he ruled "The amendment . . . is ordered as suggested by the appellant, not because the Court has any recollection of that but to give the appellant the benefit of the doubt in the matter."

[4] A typical ruling by the trial court on a general objection is as follows:

"Going over then to Page 1048, Lines 4 to 10, defendant makes no suggestion as to what ought to go in there. A check with the shorthand notes indicates that the transcription is correct. The objection is overruled."

Occasionally the trial judge ruled as follows on an objection that was cast in general terms:

"Page 866, nothing being pointed out which would be any assistance to the Court in amending the transcript, the amendment is disallowed. However, this again happens to be one of those instances in which the testimony and the manner in which it was given impressed themselves strongly on my mind, and I am quite satisfied that that is a verbatim transcription of that portion of the testimony and is not inaccurate as asserted."

developed; and perhaps only then can the basic constitutional defect be laid bare. Such, for example, was the situation in *Moore* v. *Dempsey,* 261 U. S. 86; *Wade* v. *Mayo,* 334 U. S. 672; and *Leyra* v. *Denno,* 347 U. S. 556, where miscarriages of justice were prevented only through the writ of habeas corpus. And see Pollak, Proposals to Curtail Federal Habeas Corpus for State Prisoners: Collateral Attack on the Great Writ, 66 Yale L. J. 50.

But the fragile grounds upon which the present decision rests jeopardize the ancient writ for use by federal courts in state prosecutions. The present decision states in theory the ideal of due process. But the facts of this case cry out against its application here. Chessman has received due process over and again. He has had repeated reviews of every point in his case. The question of the adequacy of the reconstructed record has been here seven times. The question of Chessman's right to participate in the settlement proceedings has been here at least four times.[5] Not once before now did a single Justice vote to grant certiorari on that issue. If the failure to let Chessman, or a lawyer acting for him, participate in the hearing on the settlement of the record went to jurisdiction [6] (as it must for habeas corpus to issue), then we should have granted certiorari when the Supreme Court of California first held in *People* v. *Chessman,* 35 Cal. 2d 455, 218 P. 2d 769, that the reconstructed record was a proper record for appeal. That decision of the California Supreme Court was announced May 19, 1950. We denied certiorari on October 9, 1950. *Chessman* v. *California,* 340 U. S. 840. Nearly seven years later we return to precisely the same issue and not only grant certiorari but order relief by way of habeas corpus.

---

[5] See the Appendix to this opinion, *post,* p. 173.

[6] See *Johnson* v. *Zerbst,* 304 U. S. 458.

On Chessman's first appeal, Justice Carter and Justice Edmonds dissented from the decision of the California Supreme Court, stating that in their view the necessity to use a reconstructed record in a capital case required a new trial. 35 Cal. 2d 455, 468–473, 218 P. 2d 769, 776–780. That view to me makes sense as a matter of state law. But the Court today makes no such ruling. To order, after this long delay, a new record seems to me a futility. It must be remembered that Chessman was convicted on May 21, 1948—over nine years ago. It is difficult to see how, after that long lapse of time, the memory of any participant (if he is still alive) would be sharp enough to make any hearing meaningful. We meddle mischievously with the law when we issue the writ today. We do not act to remedy any injustice that has been demonstrated. When the whole history of the case is considered, we seize upon a technicality to undo what has been repeatedly sustained both by the California Supreme Court and by this Court. I would guard the ancient writ jealously, using it only to prevent a gross miscarriage of justice.

APPENDIX TO OPINION OF MR. JUSTICE DOUGLAS.

Before his appeal was heard by the California Supreme Court, Chessman moved in that court for orders augmenting and correcting the record, and for a dismissal of his automatic appeal. On May 19, 1950, the California Supreme Court granted the motion for augmentation of the record, insofar as it sought to have added to the transcript the *voir dire* examination of jurors and the prosecutor's opening statement. Further relief was denied. *People* v. *Chessman*, 35 Cal. 2d 455, 218 P. 2d 769. On June 12, 1950, that court denied a petition for a writ of habeas corpus without hearing or opinion. Chessman's

petition for a writ of certiorari to review that decision was filed in this Court on July 31, 1950. No. 98, Misc., 1950 Term. In the petition, Chessman urged that he had been denied due process because he was not present at the hearing in which the trial judge considered objections to the transcript. Certiorari was denied on October 9, 1950. *Chessman* v. *California,* 340 U. S. 840.

Chessman then petitioned the United States District Court for the Northern District of California for a writ of habeas corpus and equitable relief. On December 4, 1950, the District Court discharged its order to show cause and dismissed the petition. On December 27, 1950, the District Court denied Chessman leave to appeal *in forma pauperis,* and, on January 9, 1951, denied a certificate of probable cause. On February 27, 1951, the United States Court of Appeals for the Ninth Circuit denied a petition for a certificate of probable cause and for leave to appeal *in forma pauperis.* On April 2, 1951, Chessman petitioned for a writ of certiorari to review that decision of the Court of Appeals, and for leave to file a petition for habeas corpus. No. 442, Misc., 1950 Term. In this Court, Chessman contended that the state court should be enjoined from deciding his pending appeal until it granted him a full hearing on the question of the adequacy of the record. Certiorari and the motion for leave to file petition for writ of habeas corpus were denied on May 14, 1951. *Chessman* v. *California,* 341 U. S. 929.

The California Supreme Court affirmed Chessman's conviction on December 18, 1951. *People* v. *Chessman,* 38 Cal. 2d 166, 238 P. 2d 1001. Chessman filed a petition for a writ of certiorari on February 20, 1952. No. 371, Misc., 1951 Term. In this Court, he claimed that he had been denied due process because of the manner in which the record was prepared and particularly because he had been denied an opportunity to prove his factual contentions as to the inaccuracy of the transcript. It was also

contended that he had been denied the opportunity to prepare for trial, that the confession introduced against him was coerced, that the prosecution had unfairly presented its case, that his defense had been unreasonably hampered at the trial, and that the statute under which he was sentenced to death was unconstitutional. Certiorari was denied on March 31, 1952. *Chessman* v. *California,* 343 U. S. 915. Rehearing was denied on April 28, 1952. 343 U. S. 937.

On May 19, 1952, Chessman filed a petition for writ of habeas corpus in the United States District Court for the Northern District of California. The District Court denied the petition without hearing on June 9, 1952. The United States Court of Appeals for the Ninth Circuit affirmed that decision on May 28, 1953. *Chessman* v. *People,* 205 F. 2d 128. Petition for a writ of certiorari was filed November 9, 1953. No. 239, Misc., 1953 Term. Here, Chessman contended that he was entitled to a hearing on his contentions in the courts below that he was forced to go to trial unprepared, that coerced confessions had been introduced into evidence against him, that the prosecution and judge were guilty of misconduct. It was alleged that some of these matters could not have been properly determined by the California Supreme Court because of inadequacies in the record, which, it was alleged, had been fraudulently prepared without giving him the opportunity to prove the inaccuracy or fraud. Certiorari was denied on December 14, 1953. *Chessman* v. *California,* 346 U. S. 916. Rehearing was denied on February 1, 1954. 347 U. S. 908.

On July 16, 1954, Chessman filed a petition for a writ of habeas corpus in the Supreme Court of California. That petition was denied July 21, 1954, without written opinion. (Collateral proceedings are: *In re Chessman,* 43 Cal. 2d 296, 273 P. 2d 263; *In re Chessman,* 43 Cal. 2d 391, 274 P. 2d 645; *In re Chessman,* 43 Cal. 2d 408,

274 P. 2d 645, 655.) Chessman's petition for a writ of certiorari was filed August 14, 1954. No. 285, 1954 Term. He contended that the trial transcript had been fraudulently prepared by the prosecutor, reporter and trial judge. On October 25, 1954, certiorari was denied "without prejudice to an application for a writ of habeas corpus in an appropriate United States District Court." *Chessman v. California,* 348 U. S. 864.

Chessman applied to the United States District Court for the Northern Division of California for a writ of habeas corpus on December 30, 1954. The District Court dismissed the petition without a hearing on January 4, 1955. *In re Chessman,* 128 F. Supp. 600. On January 11, 1955, Chief Judge Denman of the Court of Appeals for the Ninth Circuit granted a certificate of probable cause for appeal. *Application of Chessman,* 219 F. 2d 162. The Court of Appeals for the Ninth Circuit, sitting *en banc,* on April 7, 1955, affirmed the District Court decision. *Chessman v. Teets,* 221 F. 2d 276. Petition for a writ of certiorari was filed June 30, 1955. No. 196, 1955 Term. It was alleged that prejudicial statements of the trial judge at the trial had been deleted from the transcript as a result of a fraudulent conspiracy between the prosecuting attorney and the court reporter. It was also alleged that Chessman's right to be present at the "vital stage of the proceedings" to settle the record had been "summarily ignored." On October 17, 1955, certiorari was granted, the judgment of the Court of Appeals was reversed, and the case remanded to the District Court for a hearing on Chessman's allegations of fraud. *Chessman v. Teets,* 350 U. S. 3.

Hearings were ordered in the District Court, commencing January 9, 1956. Hearings were commenced on January 16, after Chessman was granted two continuances. The hearing lasted 7 days. Finding that there had been no fraud, and that the trial judge's statements

and instructions to the jury had been accurately reported, the District Court discharged the writ on January 31, 1956. *Chessman* v. *Teets,* 138 F. Supp. 761. The Court of Appeals affirmed on October 18, 1956. *Chessman* v. *Teets,* 239 F. 2d 205. Rehearing was denied on November 20, 1956. Chessman's seventh petition for a writ of certiorari was filed on February 1, 1957. No. 566, Misc., 1956 Term.* We granted certiorari, limiting it to the question whether Chessman's failure to be represented in person or by counsel at the settlement proceedings deprived him of due process of law, thus excluding review on the issue of fraud. See 353 U. S. 928.

---

*Other reported proceedings in connection with Chessman's case are as follows: *People* v. *Superior Court* and *In re Chessman,* 273 P. 2d 936 (Cal. Dist. Ct. of App. 1954); *In re Chessman* and *People* v. *Superior Court,* 44 Cal. 2d 1, 279 P. 2d 24 (1955). And see the opinion of Judge Hamley, below. 239 F. 2d 209–210, n. 2.