UNITED STATES of America ex rel.
Thomas KLING, Relator-Petitioner,

v.

J. E. LA VALLEE, Warden of Clinton
Prison, Dannemora, New York,
Respondent.

Civ. No. 8174.

United States District Court
N. D. New York.

Oct. 10, 1960.

Thomas Kling, relator-petitioner pro se.

Louis J. Lefkowitz, Atty. Gen., of New York, Frank D. O'Connor, Dist. Atty., Queens County, Long Island City, N. Y., Raymond B. Madden, Asst. Atty. Gen., Benjamin J. Jacobson, Asst. Dist. Atty., Long Island City, of counsel, for respondent.

JAMES T. FOLEY, District Judge.

The relator was convicted in Queens County, New York, after a jury trial, of burglary third degree, robbery first de--

gree and assault second degree, and on May 2, 1952 was sentenced by Queens County Judge Farrell as a fourth felony offender to a term of from thirty years to life. He was resentenced on April 28, 1958 as a third offender to a term of not less than twenty nor more than sixty years after a 1926 conviction used against him previously was vacated. At the trial in 1952, he was a co-defendant with the notorious Willie Sutton, who took such pride in his preparation, technique and accomplishment of his lifetime trade as a bank robber that he was the subject of a biography, "I, Willie Sutton", as described to and written by Quentin Reynolds. The third alleged participant in the spectacular, armed bank robbery of the Manufacturers Trust Company in Sunnyside, New York, on March 9, 1950, for which relator was convicted and sentenced was one John DeVenuta, who became a state's witness at the trial. Neither Sutton nor the relator took the stand at the trial. The solving of this brazen, well-planned robbery two years after it was done, again, in my judgment, is a tribute to the alertness, intelligence and perseverance of police officers in the continuous jungle warfare against shrewd, professional criminals in the metropolitan area of New York.

In the handwritten petition for a writ of habeas corpus accompanied by no other supporting affidavits, the claims of constitutional violation are that the relator was deprived of his right to appeal because his assigned counsel did not file a notice of appeal from the original judgment of conviction, when requested to do so; that the Appellate Division, Second Department, New York, in 1958 and 1959 deprived him of due process by denial of leave to appeal as a poor person from the coram nobis denial in 1958 by the Queens County Court; that the suppression of material evidence by the prosecution such being the statement and possible testimony of one Nicholas Sudano, a United States mailman, that "could have caused a different verdict" denied constitutional right to a fair trial.

As is my practice in many of these applications, I issued an order to show cause to the Attorney General of New York and the District Attorney of Queens County. Helpful answering affidavits in opposition have been filed in behalf of both. The most extensive is made by Assistant District Attorney Jacobson. Together with his own affidavit covering in fascinating fashion the details and solution of this robbery, there is attached the complete papers filed with Judge Farrell, decidedly interesting reading, on the application for a writ of error coram nobis, the minutes of the arguments of the attorneys on the application and the opinion of Judge Farrell denying the same without a hearing. In a fine spirit of cooperation, there is furnished to me by the County Clerk of Queens County at the request of the District Attorney the minutes of the trial in 1952, discontinued at page 610. The significant reason for the end of the transcript without completion was that Sutton, who had filed a notice of appeal dated May 29, 1952, by stipulation and agreement withdrew and discontinued the notice of appeal in October, 1952. As stated previously, no appeal was filed in behalf of the relator and the claim here that his assigned attorney was delinquent in such respect is supported only by his own statement.

The reports of New York show that the Appellate Division, Second Department, denied a motion to dispense with printing, to enlarge time, and for other relief in the appeal from the coram nobis denial in 1958. It is not clear whether or not the relator applied for leave to prosecute such appeal as a poor person although that may be so. Reargument of the same motion was denied. In June, 1959, a motion to dismiss the appeal was granted and the appeal was dismissed. (People v. Kling, (three decisions) 11 A.D.2d 917, 206 N.Y.S.2d 1019). No appeal was taken to the Court of Appeals, New York. A petition for certiorari was applied for and denied by the U. S. Supreme Court. 361 U.S. 935, 80 S.Ct. 376, 4 L.Ed.2d 356. It should be

mentioned because the point is made in the relator's petition that the Clerk of the Supreme Court by direction requested response from the District Attorney "directed to the suppression of evidence allegation, particularly in connection with Mr. Sudano, and whether petitioner was entitled to hearing on that allegation. The District Attorney submitted to our highest court a seventeen-page memorandum, a copy of Sudano's statement to the postal authorities, a copy of the coram nobis minutes of argument, all much the same as provided here. A letter dated August 22, 1960, from Assistant District Attorney Jacobson clarifies this feature and shall be made part of the record in this Court.

At the threshold there is the serious question as pressed by the Attorney General and the District Attorney whether or not there has been satisfactory exhaustion of available state remedies. 28 U.S.C.A. § 2254. U. S. ex rel. Marcial v. Fay, 2 Cir., 247 F.2d 662 ruled that the denial for leave to appeal as a poor person by the Appellate Division because the Court of Appeals, New York, had no jurisdiction allowed the state prisoner to catapult to the Supreme Court. It was noted (at page 665) that the Court of Appeals, New York, was adopting a more liberal view toward allowing such appeals, citing People v. Kalan, 1 N.Y.2d 922, 154 N.Y.S.2d 980, 13 N.E.2d 920; People v. Kalan, 2 N.Y.2d 278, 159 N.Y.S.2d 480, 140 N.E.2d 357. To those citations may now be added People v. Pride, 3 N.Y.2d 545, 170 N.Y.S.2d 321, 147 N.E. 2d 719; People v. Pitts, 6 N.Y.2d 288, 189 N.Y.S.2d 650, 160 N.E.2d 523. This again shows the great interest and eagerness of the Court of Appeals in New York to conform to the policy of the highest court in the land when the policy and approach is made clear. There is evident an attitude to give every protection to the indigent even to go beyond the principles of Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891. However, here we do have a final order of dismissal by the Appellate Division appealable to the Court of Appeals by the Pitts

case, supra (July 1959), although it may not have been that clear when the appeal by this relator was dismissed in the Appellate Division. There are strong cases in the Second Circuit that such failure caused by inaction may bar and be fatal to federal relief. U. S. ex rel. Kozicky v. Fay, 2 Cir., 248 F.2d 520, certiorari denied 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed. 2d 1067; U. S. ex rel. Cuomo v. Fay, 2 Cir., 257 F.2d 438. However, inasmuch as there is some doubt on the question and also because the U. S. Supreme Court in its request for additional response did not direct it to this question, I shall go to the merits.

At the trial, the relator was assigned two attorneys, Mr. Sheridan and Mr. Gellman. A lady lawyer, Katherine Bitses, who attended the trial every day but did not sit in as counsel, apparently from the state record had some association with the assigned attorneys, and later became imbued with the cause of Kling after the trial. She filed her own lengthy affidavit on the coram nobis application, the affidavit of Kling, and a lengthy, poetic disavowal by Willie Sutton that Kling participated in the bank robbery. However, there is nothing I can find in that affidavit, and there is none furnished by her now that supports the claim of Kling that he instructed his attorneys to file a notice of appeal and they disregarded his instructions. This claim should be answered by the writings of Judge Waterman in U. S. ex rel. Kozicky v. Fay, supra, 248 F.2d 522–523, although I am never sure in these increasing applications now assumed by the State prisoners to be reviews there is a definiteness or stability of principles to be applied. We have here only the unsupported statement of the petitioner. Brown v. Allen, 344 U.S. 443, 461, 73 S.Ct. 397, 97 L.Ed. 469, a landmark in the approach of District Judges to these problems, stated a simple guideline that liberal as the courts are, and should be as to practice in setting out claimed violation of constitutional rights, the applications must meet the statutory test of alleging facts that entitle to relief. Darr-

v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761. Justice Frankfurter, concurring in Brown v. Allen, (344 U.S. at page 502, 73 S.Ct. at page 443), also advised that a prima facie case must be made out by the petitioner just as in all other litigation and the petition should be dismissed when it fails to set out a federal question, or fails to set forth facts which, if accepted at face value, would entitle the applicant to relief. Under these principles, in my judgment, the complete burden should not be shifted to the State to explain and defend.

■ The claim of suppression of evidence is entitled to serious federal consideration. Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; U. S. ex rel. Thompson v. Dye, 3 Cir., 221 F.2d 763; certiorari denied Com. of Pa. v. U. S. ex rel. Thompson, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773. However, I find no merit at all under the circumstances here. The State made full disclosure of the affidavit of Nicholas Sudano, Mailman, first given to the postal authorities, in the coram nobis application, to the U. S. Supreme Court, and to this Court. The statement of Sudano would not help the cause of Kling at all. His view of certain of the bank robbers was limited, as he described the circumstances. There was only present in the coram nobis application to Judge Farrell the affidavit of the lady lawyer concerning her interview with Sudano and his expression that the third robber could not be as small as five feet-three. Such affidavit is not filed here by the relator. The philosophical affidavit of Sutton to clear Kling is weakened very much by the pre-trial affidavits of Sutton that he was completely innocent and was not involved in the robbery, and also to his biographer that he did not participate at all. It would be a hard search for his credibility when after such protestations of innocence, he reverses and states in his affidavit on the coram nobis application that he, DeVentura and one Longo prepared and engineered this daring robbery, putting seventeen or eighteen people under the fear of their guns. One amusing thing in Sutton's affidavit, and to me the ultimate in true friendship, is: "I also swear that the travelling bag containing handcuffs, pistols, cartridges, license plates, money bags, license blank vehicle registrations, etc. were left in his custody by me without his knowledge as to its contents." Kling was tied into the robbery by possession of a gun whose cartridges matched those found in a stolen car the day after the robbery.

Kling was identified directly on the trial as a participant. Most important of all is the testimony at the trial set forth on page 6 of Assistant District Attorney Jacobson's affidavit that the presence of the mailman, Sudano, as one who was forced to sit in the chairs lined up for the sixteen other bank employees was fully disclosed at the trial. Peculiarly, the only objection to the naming of the "postal, post-office" man was made by Mr. Sheridan, Attorney for Kling. It is clear that notice was given to the defense and they had all the power of court process to call this mailman if they so desired.

■ I am more than content to accept the decision of Judge Farrell. United States ex rel. Salemi v. Denno, 2 Cir., 235 F.2d 910; Brown v. Allen, 344 U.S. 443, 458, 497–508, 73 S.Ct. 397, 407, 441, 446. The facts to me are clear from the papers submitted and do not bear out the belated contentions made by the relator. As Justice Douglas cautioned in Chessman v. Teets, 354 U.S. 156, at page 173, 77 S.Ct. 1127, 1136, 1 L.Ed.2d 1253; "I would guard the ancient writ jealously, using it only to prevent a gross miscarriage of justice." Such caution is in accord with the settled principle of federal law that it is the very essence of our federalism that the State should have the widest latitude in the administration of their own systems of criminal justice. Hoag v. New Jersey, 356 U.S. 464, 468, 78 S.Ct. 829, 2 L.Ed.2d 913.

The petition is denied and dismissed. The papers shall be filed by the Clerk of the Court without the usual prepayment of fees. The application to proceed in forma pauperis is granted only to the

limited extent that a notice of appeal from this decision shall be filed by the Clerk without the payment of fee if offered to be so filed by the relator.

It is so ordered.