**UNITED STATES of America,**
**Appellee,**

v.

**Charles Leo FARLEY, Defendant-Appellant.**

**No. 422, Docket 24577.**

United States Court of Appeals Second Circuit.

Argued June 21, 1961.

Decided July 21, 1961.

Bella V. Dodd, of Dodd, Cardiello & Blair, New York City (Charles Leo Farley, defendant-appellant, pro se, on the brief), for defendant-appellant.

James M. Catterson, Jr., Asst. U. S. Atty., E.D.N.Y., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before CLARK and SMITH, Circuit Judges, and DAWSON, District Judge.

CLARK, Circuit Judge.

Defendant appeals from a conviction for robbing the Bethpage Branch of the Hempstead Bank on March 21, 1955, and for putting lives in jeopardy in the course of said robbery. 18 U.S.C. § 2113(a, d). After a jury trial below, the court entered a judgment of conviction on the verdict on May 31, 1956. Since the issues in this case include the delay in presenting the appeal, and the difficulties in preparing an adequate trial transcript after the death of one of the court reporters, we think a review of the history of these proceedings is desirable.

On June 30, 1956, the district court denied defendant's motion for leave to appeal *in forma pauperis*, on the ground that he had failed "to show merit" in his appeal. He sought review of that order in this court, United States v. Farley, 2 Cir., 238 F.2d 575, as a result of which he was allowed to renew his motion in the district court with the aid of assigned counsel. This court affirmed the denial of this second motion, 2 Cir., 242 F.2d 338; but the Supreme Court reversed, holding that his allegations of error could not be evaluated without a transcript of the trial record or stipulated statement of the relevant facts. Farley v. United States, 354 U.S. 521, 77 S.Ct. 1371, 1 L.Ed.2d 1529. On June 24, 1957, therefore, the Supreme Court remanded the case for the purpose of preparing an adequate trial transcript. On August 12, 1957, he was assigned counsel for the purpose of settling the record pursuant to the Supreme Court's remand; and on September 27, 1957, we ordered the minutes transcribed.

On November 22, 1957, the United States Attorney informed defendant's counsel that Court Reporter Carey, one of the trial stenographers, had been dead since March 5, 1957. Further delay was then occasioned in securing a transcription of the portion of the minutes taken by this deceased reporter. At one point experts both in New York and in Utah were unable to undertake the task. On June 3, 1959, after these futile efforts, Judge Bruchhausen sent the notes to Colorado to be transcribed by one Clifford Gehman, a stenographic expert of long experience. After careful study of Carey's idiosyncrasies of penmanship, and of the shorthand system he had used, Gehman completed the process of transcription; and a copy of the minutes was forwarded to the defendant. In December 1959 defendant submitted an affidavit claiming that the transcription was inaccurate, and in February 1960 he submitted a statement of claimed errors to this court. He then moved for a hearing to settle the record; but Judge Bruchhausen, denying this motion, settled the record ex parte.

On June 13, 1960, defendant moved in this court to object to this ex parte settlement; and on September 1, 1960, we ordered that this objection be noted and considered as one of his points on appeal. Briefs were submitted on the appeal; but this court, without ruling on the merits, on December 8, 1960, remanded the case to the district court for settlement of the record with a hearing pursuant to Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253. The directed hearing was held before Judge Byers, who, on April 3, 1961, denied most of defendant's claims of error. On April 19, 1961, defendant's motion to proceed *in forma pauperis* was granted; and we finally heard the appeal at our June sitting of the current judicial year. In addition to all this there were various interlocutory motions and rulings which we shall not bother now to recall.

■■ The delay in hearing the appeal, occasioned principally by the difficulties arising from the reporter's death, does not constitute any denial of due process. This court's earlier order that the objection to an ex parte settlement be deemed a point on appeal did not imply that we would reverse the judgment of conviction if we believed that ex parte settlement was improper. Following our remand for

settlement of the record, a full hearing was held, fully complying with the requirements of Chessman v. Teets, supra, 354 U.S. 156, 77 S.Ct. 127. Both defendant and his trial attorney testified as to their recollections of the disputed trial testimony. Clifford Gehman, the expert stenographer who transcribed the notes, testified as to his qualifications and as to the procedure which he followed. When first called to testify, he was unable to read Carey's notes; and he was given a day to refresh his recollection as to the peculiarities of Carey's penmanship and of his system of shorthand. Gehman then returned to the stand, and testified in detail with reference to his transcription and to the claimed errors. Defendant cross-examined Gehman and succeeded in revealing the difficulties that arise in transcribing notes made by another. Unlike Chessman v. Teets, supra, 354 U.S. 156, 77 S.Ct. 1127, no attack was made on Gehman's impartiality; and we find no error in the court's denial of a request for appointment of a second expert to assist defendant in cross-examining Gehman. In addition to the above testimony, the trial judge and the government attorney who tried the case testified as to their recollections, as did one of the witnesses at the original trial.

■ The procedure thus followed was an eminently fair means of settling the record in a difficult situation. In ruling on defendant's claims of error, Judge Byers gave weight to the assumption that an experienced court reporter such as Mr. Carey would not ordinarily omit to record portions of trial testimony or colloquy. This was an obviously natural position, in accord with the dictates of common sense and experience; and we do not feel that Judge Byers can be accused of unfairness in adopting this position or in generally rejecting defendant's testimony as that of a highly interested witness. Far from giving defendant "a perfunctory, inadequate hearing," as he charges in his brief, Judge Byers gave scrupulous attention to the various claims of error in a three-day hearing which produced a transcript of 409 pages.

Accepting the transcript as settled by Judge Byers, we now turn to the appeal on the merits. The evidence of guilt, though circumstantial, is substantial; and the alleged errors go to points of procedure and evidence.

■ Defendant's first point is that he was denied a speedy trial. He was arrested and brought before a United States Commissioner on December 2, 1955. Trial did not begin until May 7, 1956. This delay was occasioned first by his change of counsel and then by the pendency of other matters before the court and by the illness or pregnancy of certain prosecution witnesses. He acknowledges in his brief that "no pretrial motion for a speedy trial was made because of the excuses [illness, pregnancy, and calendar delays] put forth by the government." Furthermore, he does not show that he was in any way prejudiced by the brief delay. In the circumstances shown, we cannot say that any unreasonable delay existed in bringing him to trial. See, e. g., McDonald v. Hudspeth, 10 Cir., 113 F.2d 984, 986, certiorari denied 311 U.S. 683, 61 S.Ct. 64, 85 L.Ed. 441.

■■ Defendant next complains of an alleged denial of his request for the production of statements made by certain witnesses to the FBI. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. The transcript as settled failed to show that any demand was made for such statements, however; and Judge Byers rejected defendant's testimony to the contrary. His trial counsel was unable to recall making any such demands, and it is to be noted that the Jencks ruling came in 1957, long after the trial below in 1956. So we obviously cannot hold Judge Byers' ruling on this issue to be clearly erroneous. Accordingly, we must reject this claim of error on the ground that defendant never made a timely demand for the statements. See

United States v. Klinghoffer Bros. Realty Corp., 2 Cir., 285 F.2d 487, 493; United States v. Kessler, 2 Cir., 253 F.2d 290, 292.

Defendant also claims error in certain alleged references to other crimes. One of these errors relates to a reference to forged signatures on credit cards. In the course of developing its case, the government sought to establish that defendant had used a 1951 Pontiac from which, one half hour after the robbery, a bundle was thrown containing clothes worn by the robber. In proving defendant's use of this car, the government established that he had used a gas credit card owned by one Murray Garren to purchase gas for a car bearing the same license number as the Pontiac in question. Defendant then testified in his own behalf that he received the card as security for a gambling debt and that he used it several times with Garren's consent. On cross-examination, the government brought out, without objection, that he had used other cards. The use of these cards was relevant to the government's case, in that it tended to establish his presence in Bethpage, the location of the bank, at certain times prior to the robbery. The credit cards having come into the case quite properly, the prosecutor had a right to discuss them in his summation. In so doing, he stated that "simply because thirty-three forgeries appear on these cards is no reason alone to convict this man." While the description of defendant's use of the cards as "forgeries" was unfortunate, the circumstances of his use of the cards had already been presented at trial; and we do not think any reversible error was committed in this isolated reference. The defense counsel made no objection, and did not think the matter of sufficient moment to justify a request for a charge on the subject. The use of the word "alone" should not, we think, be given exaggerated significance.

Certain other comments made in the course of the trial do not constitute charges of crime, as defendant now claims. In exploring his possession of the 1951 Pontiac, the government went into his possession of other cars, including the Ford in which he was arrested. He testified that he borrowed that car from one Sandello, and denied that he obtained the car by riding it out of an agency owned by one Rupp without his permission. We do not think that questioning defendant on this point imputed to him the crime of theft of the automobile, as he now charges. Neither do we find that he was accused of perjury when the prosecution asked him if he knew he was punishable for perjury in case he were lying. Similarly, testimony that defendant had a bank depository bag several months before the bank robbery does not constitute an accusation of some previous crime against the bank.

Defendant further complains of the admission of evidence concerning his past criminal record when a government witness testified that he knew that the police had his fingerprints in their records. According to the transcript, however, this fact was first mentioned in a question put to this witness by defense counsel; and the witness's reference to this fact was made in response to this question.

The government's introduction of evidence of defendant's fingerprint on the bank window did not entitle him to introduce evidence of other fingerprints also found on the window. The presence of his fingerprints on the window served to disprove his alibi that he was not near the bank. The presence or absence of other fingerprints on the window was immaterial on this issue. In this connection we note that the judge's charge adequately presented the issues to the jury, including the problem of circumstantial evidence; and there was no error in refusing a special request relating to fingerprint evidence.

There was no denial of equal protection of the laws in our acceptance of tardy government briefs. Further,

defendant has had opportunity to make and has made full response thereto. Reviewing the lengthy history of this case, we feel that it shows careful, if not unusual, solicitude to preserve the rights of an accused adroit in discovering and exploiting procedural difficulties. We are deeply indebted to Mrs. Bella V. Dodd, originally of counsel to defendant, who, at the court's request, accepted the task (not without difficulty) of serving as his assigned counsel in co-operation with him in the presentation of this appeal. Her services were necessary and important to him and to the court.

Judgment affirmed.

Duffy, Circuit Judge, dissented.
See also 7 Cir., 294 F.2d 310.