JUSTICE HARRISON,
specially concurring:
I concur with the majority. I note with considerable interest the dissent of Mr. Justice Sheehy, and while I cannot concur in his dissent, I feel the time has come to note the frustrations of State Appellate Justices in capital cases. Like Justice Sheehy, I have authored three of some twelve cases that have been before this Court in the past twenty-nine years. In addition, I have read the briefs and voluminous transcripts of every case in which I upheld the death sentence. It was not a pleasant task to say the least, however, it comes with this office.
I find myself disagreeing with some of Mr. Justice Sheehy’s dissent and, in taking issue with his statements, I do not question either his integrity or his right to change his mind. First he notes that whether the death penalty is acceptable to contemporary Montana society is arguable. As he notes the last time it was submitted to the people of this State it was overwhelmingly approved. Yet as he says the last death penalty sentence that was carried out in this State was in 1944. What he fails to note is that in the past thirty years the United States Supreme Court has twice found State laws providing for the death sentence unconstitutional. This necessitated twenty-one States passing new laws in order to comply with the United States Supreme Court’s opinions. Montana is one of those States. After each of the United States Supreme Court’s opinions, a thousand or more persons sentenced to death had their sentences changed to life sentences and many of these people have since been paroled or have served the maximum time and returned to the various communities of this country. I find the fact that the States have redone their laws twice in this period indicative of strong support for the death sentence in those states.
Likewise I disagree with his premise that the Montana experience since 1977, when the legislature put the sentencing in the hands of the trial judge, rather than the jury, cannot be said to represent the wide spectrum of public sentiment on social issues called for by the Supreme Court in Gregg v. Georgia (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, reh. den. 429 U.S. 875, 97 S.Ct. 197, 50 L.Ed.2d 158, (1976). Rather, I find that trial judges, like appellate judges, take great care and caution before ever sentencing a person *407 to death. I believe this protection for a defendant prevents runaway jury passions.
It is not the various State trial judges or justices of appellate courts who have delayed the carrying out of their laws on capital punishment. That obvious honor belongs in the Federal system. The worst example in this State is that of Duncan McKenzie who was convicted in 1975, and who has now spent some fourteen years on death row. There was a time in our history when people worried about the execution of Caryl Chessman, a murderer in California, who spent some seven years on California’s death row. Chessman v. Teets (1957), 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253. He was just a newcomer to death row compared to McKenzie, whose case has been like a yo-yo ever since it left this Court and went into the Federal system. It has been said of McKenzie’s case that he has a death sentence but “he will carry it out by dying of old age.”
There is no more difficult work, nor emotional task than that given jurors, trial judges and appellate justices in finding a human being guilty of murder, and sentencing, upholding or approving of a death sentence. In each of the cases heard and approved by this Court we have had twelve jurors find the defendant guilty, a trial judge both approve of their findings and give the sentence, followed by seven appellate justices carefully reading the record and finding that the defendant had a fair trial and was properly sentenced. Throughout the trial and appellate proceedings, competent trial lawyers plus judges and justices, many of whom have tried and defended capital cases in their practice, have been given the duty of administering justice. However, once it leaves the State jurisdiction and goes into the Federal system often times, due to the multiple cases before both the Circuit Courts and the Supreme Court, law clerks review the work of the State jurisdiction. While the United States Supreme Court can ask for transcripts of the cases I am informed that often they do not have them as did the State Supreme Courts in their review of the cases. As a result we have over 2,000 prisoners on death row in the various States having capital punishment statutes. The law should have some finality but as witnessed above in the McKenzie case, there seems to be none. Only the United States Supreme Court can provide the answer and that answer is long overdue.