**UNITED STATES ex rel. William C. MacLAREN, Petitioner,**

**v.**

**Wilfred L. DENNO, Warden, Sing Sing Prison, Ossining, New York, and People of State of New York, Respondents.**

United States District Court
S. D. New York.
May 11, 1959.

238

John J. Seffern, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York, for respondents, George. K. Bernstein, Asst. Atty. Gen. of State of New York, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Relator MacLaren is presently confined in Sing Sing Prison under a ten to twenty year sentence imposed by the Court of General Sessions of the County of New York. The sentence was imposed upon a judgment of conviction on a plea of guilty to the crime of burglary in the second degree as a second offender. A prior suspended sentence on the same conviction had been revoked for violation of probation.

Relator maintains that he was denied due process of law in violation of his constitutional rights under the Fourteenth Amendment in the hearing on violation of probation as a result of which his suspended sentence and probation was revoked. He therefore claims that his present sentence is invalid and void and that he is entitled to be released from confinement.

Relator was produced before this court pursuant to a writ of habeas corpus. He asserted that he was entitled to be released as a matter of law upon the record in the State Court. He rested on that record and stated that a hearing on the facts before me would add nothing. Cf. United States ex rel. Alvarez v. Murphy, 2 Cir., 246 F.2d 871. After hearing argument I called for and received the rele-

vant state court records which are now part of the record in this proceeding. See United States ex rel. Rogers v. Richmond, 2 Cir., 252 F.2d 807, certiorari denied with opinion sub nom Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361.

On July 30, 1948 petitioner pleaded guilty to burglary, third degree, on indictment No. 1559/1948, in the Court of General Sessions. On October 21, 1948 Judge Mullen of that court sentenced MacLaren to a term of ten to twenty years, but suspended execution of the sentence and placed him on probation for an indefinite period. Probation commenced on December 12, 1949 after MacLaren had been released on parole from a two to three year sentence which had been imposed at the same time on a plea of guilty to another indictment which is not involved here. Three months after his release, on March 15, 1950, MacLaren was arrested by officers of the Safe and Loft Squad of the New York City Police Department. He was booked on a charge of burglary and the next day appeared in Magistrate's Court. No hearing was had on that day nor on the adjourned date March 23. On March 23, 1950 an indictment No. 711/1950 was returned against him charging, inter alia, attempted burglary and possession of burglar's tools.

In the interim, on March 20, 1950, relator was brought before Judge Mullen on charges that he had violated the terms of the probation imposed when his ten to twenty year sentence on the 1948 third degree burglary conviction was suspended. After a hearing, at which testimony was taken, Judge Mullen held that the acts which led to relator's arrest on March 15, 1950 constituted a violation of probation, ordered probation and the previous suspended sentence revoked, and resentenced relator to ten to twenty years imprisonment on the 1948 third degree burglary conviction.

The indictment of March 23, 1950 for attempted burglary and possession of burglar's tools came on for trial in June 1952. On June 2, 1952, after a jury was impaneled, the indictment was dismissed on motion of the District Attorney with the consent of defense counsel. This was done because petitioner was already serving the ten to twenty year sentence imposed upon him on the 1950 third degree burglary indictment after revocation of his probation by Judge Mullen.

Thereafter, on September 8, 1952, relator brought on a writ of error coram nobis in the state court. This was heard by Judge Mullen, who held an extensive hearing and denied the writ. An appeal to the Appellate Division, 282 App.Div. 1012, 126 N.Y.S.2d 197, which presented, inter alia, the questions now before this court, was unsuccessful and leave to appeal to the Court of Appeals denied. The United States Supreme Court denied certiorari 348 U.S. 847, 75 S.Ct. 71, 99 L.Ed. 667, rehearing denied, on November 22, 1954, 348 U.S. 890, 75 S.Ct. 209, 99 L.Ed. 700. Thereafter relator filed a petition for a writ of habeas corpus in the New York State Supreme Court. This petition was denied and, after various steps by way of appeal were taken, the New York Court of Appeals again refused to hear an appeal from denial of the writ on June 24, 1958.

█ It is conceded, and I agree, that the proceedings taken in the state court, together with denial of review by the United States Supreme Court in 1954, show that petitioner has exhausted his state post-conviction remedies on the questions raised in the present proceeding within the requirements of 28 U.S.C. § 2254.

Relator's present contentions revolve about the finding by Judge Mullen in 1950 that he had violated his probation on the 1948 third degree burglary conviction. The nub of his contention is that § 935 of the New York Code of Criminal Procedure safeguarded the constitutional right to a fair hearing of one charged with violation of probation but that he was denied due process at the 1950 hearing in violation of his constitutional right so safeguarded.

Petitioner relies on two occurrences at the hearing to support this contention.

Two witnesses were sworn. Detective Lieutenant Casey of the Safe and Loft Squad testified to MacLaren's apprehension with burglar's tools in his possession after leaving a building on 86th Street in New York City. Casey further testified that MacLaren admitted an attempt to burglarize an office in that building and that, upon immediate investigation, the locks on the office showed obvious signs of having been tampered with. He also stated that MacLaren admitted in some detail an attempted burglary at a building on 79th Street which he had been observed to enter earlier on the evening of his apprehension.

Detective Fyffe, of the Safe and Loft Squad testified in detail that the tools found in MacLaren's possession (which had been identified by Lieutenant Casey) were used for picking locks and that the condition of the locks of the office in the 86th Street building showed that they had been tampered with by tools.

MacLaren's attorney cross-examined both witnesses and the first error is asserted to have been made during the cross-examination of Lieutenant Casey. During questioning on the alleged 79th Street burglary attempt counsel was seeking to establish that MacLaren had not been observed actually tampering with any lock when the following colloquy occurred:

"* * * did any of the other officers see him anywhere near this door containing this lock you are talking about? [Referring to the 79th Street building]

"The Court: Just direct your attention to what Lt. Casey said. Remember this, this is not a trial. I am permitting you to ask the officer questions in order that anything may be brought out for my information that might influence me in my judgment.

"Mr. Siegal: That is the reason for it.

"The Court: Don't feel that you have any rights here, you have no right.

"Mr. Siegal: I have no right, I realize that.

"The Court: I am giving this to you as a privilege and I want you to conduct yourself accordingly.

"Mr. Siegal: That's right. This is a serious matter.

"The Court: If it weren't I would not have you here and I wouldn't have these witnesses here.

"Mr. Siegal: I know that Sir.

"The Court: But I am just admonishing you to conduct yourself in the way I think you should under the circumstances."

MacLaren's counsel then continued his cross-examination of the witness which was not again interrupted until he concluded with "That is all".

The second occurrence took place at the conclusion of the hearing when the court inquired of Police Captain Maguire, who was not sworn:

"The Court: Do you have anybody else that I ought to hear from Captain?

"Captain Maguire: A couple of detectives, but they said the same as Lt. Casey did.

"The Court: Did you, personally, talk to the defendant?

"Captain Maguire: Yes, Sir, I did after his arrest.

"The Court: Tell me what he said.

"Captain Maguire: Well, he said he wanted to go out and try to make a big score, that was his reason for it. He said he was sorry. He said he thought the thing over when he came out and then about three weeks prior to the arrest he decided to go out and try to make some sort of a big killing that would keep him for the future.

"The Court: Did he indicate why he went into this particular office in any way?

"Captain Maguire: He did say that he picked on real estate offices for the purpose of, No. 1, obtaining

any cash that might be on the inside, No. 2, there might be some keys in there with tags on them which would indicate they were keys to other buildings that he could burglarize.

"In other words, he stated that he did not want ever to make a break that would be visible.

"The Court: All right. Mr. Siegal, [petitioner's attorney] I will hear you on the question of violation of probation."

Petitioner's attorney did not request the opportunity to cross-examine Maguire but advised the court that MacLaren denied all the charges against him and requested the court to "adjourn your sentence here until such time as we have had a chance to try out this case in the court below". He further said "In view of what he has told me I think we ought to be in a position to come to your Honor after all of the testimony is in and discuss this sentence".

The court then advised counsel that he was passing only on the question of violation of probation and that as to any charges by way of indictment which might be brought against MacLaren for the acts for which he was arrested he would be able to have a trial and to present any defenses he wished. The court then found that the defendant had violated the terms of his probation, revoked the suspended sentence, and re-sentenced him to the term he is now serving.

The first theory on which the relator attacks the 1950 violation of probation hearing is that because the acts for which his probation was revoked constituted an indictable offense relator was entitled to a plenary trial on an indictment before his probation was revoked. This theory is without merit and needs no extended discussion.

■■■ A probationer who commits criminal acts is liable for the consequences of such acts both by indictment and conviction for the crime, and by having

his probation revoked. The two are not mutually exclusive nor does one bar the other. Consecutive sentences may be imposed for a violation of probation and for conviction of the criminal acts which constituted the violation. United States v. Tacoma, 2 Cir., 199 F.2d 482. Revocation of probation is merely a delayed sentencing of the violator for the criminal act of which he was originally convicted.[1] While he enjoys probation "[h]e is still a person convicted of an offense, and the suspension of his sentence remains within the control of the court". Burns v. United States, 287 U.S. 216, 222, 53 S.Ct. 154, 156, 77 L.Ed. 266. As long as the procedures by which probation is revoked do not violate due process there is no constitutional impediment to revocation of probation separate and apart from trial on the alleged substantive crime.

■■■ The facts that the probationer must make his defense to the probation violation prior to a possible criminal trial encompassing the same transactions as the violation does not violate the probationer's constitution rights. He is in no worse position than any accused who, from the nature of the offense, is faced with the prospect of two trials encompassing similar subject matter, e.g., a conspiracy trial, and the substantive offense which was the object of the conspiracy. No authority has been cited me and I have found none which suggests that an alleged probation violation cannot be heard before a trial on criminal charges which arise out of the same transactions.

Relator's second contention is that the colloquies referred to above rendered the 1950 hearing for violation of probation so unfair as to amount to a denial of due process. Relator asserts that he was denied any opportunity to present a defense or to cross-examine witnesses adequately and that unsworn testimony was taken and used against him.

---

1. This is not a case where a sentence is sought to be increased after the probation period has commenced. See, e. g., United States v. Rosenstreich, 2 Cir., 204 F.2d 321.

These contentions raise the question of the extent and nature of the hearing to which an accused probation violator is entitled in order to afford him due process.

 Even though a revocation of probation may be viewed as merely a delayed imposition of sentence, it is clear that there are at least some requirements of due process which must be observed. At the time of imposition of sentence the court may not arbitrarily rely on facts which are manifestly untrue. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690. However, it is equally clear that the court may rely on hearsay evidence as an aid to sentencing. Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. As long as the sentencing judge forms a rational belief as to the facts upon which to base an informed judgment a sentence within the limits allowed by law will not be disturbed, even if there are grounds for such belief. United States ex rel. Marcial v. Fay, 2 Cir., 267 F.2d 507.

 It is also well settled that due process does not require that the procedures to be followed on revocation of probation include all the formalities which must attend a criminal trial. Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. However, whether the accused probationer has any greater constitutional rights to a plenary hearing on the facts than a convicted defendant has on sentence, is as yet undecided. See Escoe v. Zerbst, supra; Burns v. United States, supra; People v. Oskroba, 305 N.Y. 113, 111 N.E.2d 235.

 It is unnecessary to decide that question here. Even assuming, for purposes of argument, that there was such material error in the original hearing on probation as to constitute violation of constitutional due process, nevertheless, any such error was fully cured by the hearing on MacLaren's petition for writ of coram nobis in 1952.

This is not to suggest that the alleged errors on which relator relies rendered the 1950 hearing nugatory. Despite the colloquy between court and defense counsel there is no indication that cross-examination of the witnesses by the defense was actually inhibited in any way. The defense was permitted to examine the witnesses who were under oath as fully as it desired. The defendant made no objection to the unsworn statement of Captain Maguire, nor did he request the right to cross-examine him. Maguire's short unsworn statement was merely cumulative in effect and, if it were disregarded, there is more than sufficient competent and unimpeached evidence to support a finding that MacLaren violated his probation.

But whatever view may be taken of the 1950 hearing, the 1952 hearing on relator's writ of coram nobis was so thorough and fair and exhaustive as to cure any error claimed to have occurred at the 1950 hearing.

The 1952 hearing was subsequent to the dismissal of the 1950 indictment. At that hearing the relator stated what he asserts his theories would have been in 1950. His attorney said that the "nature of the defense [was] that he was being framed by police officers; that the tools which were presented as having been found on his person were in fact tools which had been taken from his person several years previously in 1948", and that careful inspection in 1950 would have shown that these tools were in an unusable condition. Two other contentions were that it was impossible for the lock in the 86th Street building which MacLaren allegedly tampered with to have been in the condition described by the police expert and that MacLaren's presence in the 86th Street building could have been adequately explained since he was there to deliver a message.

At the outset Judge Mullen made it abundantly clear that he intended to have a full and complete rehearing of the entire matter and that if defendant had anything to bring forward which had not been presented at the original hearing either by way of direct evidence or on

cross-examination, he was at full liberty to do so.[2]

However, despite the opportunities afforded MacLaren by the court, an offer to give him a continuance if he so desired, and the court's statement that his only burden was to create a reasonable doubt, his counsel refused to offer any evidence, to cross-examine any of the witnesses, or to participate in the hearing in any way.[3] He consistently took the position that the two year period which had elapsed since the original hearing had so prejudiced the defense that he could not put in an adequate case. He asserted that a crucial witness, the person who, MacLaren claimed, had sent him to the 86th Street building, could not be located,[4] and that it could no longer be demonstrated that the tools which MacLaren was alleged to have in his possession in 1950 were then unfit for use, since the corrosion allegedly rendering them unusable might have accumulated between 1950 and 1952. In the face of petitioner's refusal to cross-examine, the court, sua sponte, conducted its own searching cross-examination.

The police lock expert Fyffe repeated and elaborated on his previous testimony. He stated that the tools introduced in 1952 were the same tools introduced in 1950 and were still usable, even in 1952. He unequivocally stated that to his personal knowledge the tools introduced in 1950 and re-introduced in 1952, were not the same as other tools taken from MacLaren in 1948.

Lieutenant Casey also repeated, in greater detail, the events leading to MacLaren's apprehension. Two other police officers corroborated Casey's testimony

2. The court made the following statements during the course of the 1952 hearing:

"The Court: Well may I save time by saying this? If there is anything that the defendant claims he was not permitted to show the Court at the hearing on the violation of probation, I invite him and I invite you to present that to the court in this proceeding."

\*　\*　\*　\*　\*

"The Court: \* \* \* I am inviting either you or him to produce before the Court anything which you claim was excluded at the time of the hearing. And if you cannot produce it, if you can demonstrate that it existed and that the Court precluded you from taking advantage of it, I will be very happy to have that pointed out to me."

\*　\*　\*　\*　\*

"The Court: \* \* \* If you feel that anything the Court stated limited him [MacLaren's attorney] in the scope of his examination—though he does not directly say that he felt under it I would be glad to give you a chance to elaborate on it by calling those witnesses whom I had called here and examined myself."

\*　\*　\*　\*　\*

"The Court: \* \* \* However, there isn't any doubt \* \* \* that it was the testimony of the police officers given before me which convinced me that this defendant had violated the terms of my probation.

"So that if I was in error in action upon that, I want the record to be perfectly clear that is what I acted on.

"Now in view of the situation in this matter, which I must hold a hearing on \* \* \* I shall see that the defendant be given every opportunity to examine witnesses and produce anything that he wishes to produce."

\*　\*　\*　\*　\*

"The Court: \* \* \* I certainly would give the defendant an opportunity to examine at greater length the same officers, to see if you can break them down; or convince me that there is anything in the nature of a frame-up of this defendant \* \* \*. If you could cause me to have any reasonable doubt with respect to that, I assure you I will set this thing aside in two minutes. I am not interested in formalities as much as I am in the substance of what I have done.

"\* \* \* Now if I did something wrong, acted hastily or improperly, I will give you an opportunity to produce evidence. I will have the officers here again, ask them some questions myself bearing on the very subject which you contend is a frame up. \* \* \*"

3. The State also invited proof that lapse of time had prejudiced the petitioner's case. Thus the Assistant District Attorney stated: "\* \* \* if he wants to prove that lapse of time has prejudiced the defense, he is welcome to introduce proof of that fact, as well as on the substantive merits of his defense."

4. At one point petitioner's attorney characterized this as "perhaps the chief reason" for his refusal to participate in the hearing.

in every significant detail. This testimony, if believed, established beyond cavil that there was a reasonable basis on which to revoke probation. Plainly Judge Mullen believed the testimony.

Thus, though the hearing was on a coram nobis application, Judge Mullen, in effect, held a hearing de novo,[5] and put a heavier burden on the prosecution than is required in cases of probation violation, where the question is purely one of discretion. See Burns v. United States, supra, 287 U.S. at page 223, 53 S.Ct. at page 156.

There is no reason to disturb Judge Mullen's findings of fact conscientiously made. United States ex rel. Rogers v. Richmond, supra; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. Blank v. Jackson, 2 Cir., 263 F.2d 185; United States ex rel. Jackson v. Ruthazer, 2 Cir., 181 F.2d 588, certiorari denied 339 U.S. 980, 70 S.Ct. 1027, 94 L.Ed. 1384.

█ The only question left open is whether the two year lapse of time from 1950 to 1952 and alleged prejudice resulting therefrom infected the State proceedings with constitutional error.[6] It plainly does not.

Generally where a defendant has been deprived of constitutional rights in a previous proceeding a new trial is not barred. McCleary v. Hudspeth, 10 Cir., 124 F.2d 445; United States ex rel. Westbrook v. Randolph, 7 Cir., 259 F.2d 215; Grandsinger v. Bovey, D.C.E.D. Neb., 153 F.Supp. 201; and see the directions on remand in Chessman v. Teets, 354 U.S. 156, 165, 77 S.Ct. 1127, 1 L.Ed. 2d 1253, and Escoe v. Zerbst, supra, 295 U.S. at page 494, 55 S.Ct. at page 820.

In any event such a claim has no validity unless some substantial prejudice

has been shown. Here the only attempt to show prejudice at the 1952 hearing was an affidavit of MacLaren's counsel to the effect that he could no longer locate the person who, MacLaren claimed, asked him to go to the 86th Street address where he was arrested.

The court had the usual discretion to give or refuse a continuance, and, in fact, offered a continuance which was refused by MacLaren's counsel. MacLaren's rights at the second hearing were not enlarged because the previous hearing may have been voidable. See Yoho v. United States, 9 Cir., 202 F.2d 241.

To hold that the fair and full hearing given MacLaren in 1952 should be set aside on constitutional grounds merely because of his inability to locate a witness (if that be assumed to be the fact) would give a defendant in his position enormous advantages to which he would not be entitled. It would mean that errors committed in a first trial would make it constitutionally impossible to retry a defendant merely on his representation that an alibi witness had become unavailable. There is no sound reason why the usual rule should not apply and any questions raised by the unavailability of a witness left to the discretion of the trier of the facts where it belongs. See Heflin v. United States, 5 Cir., 223 F.2d 371.

It may be said in addition that there has been no showing that the presence of the witness would have changed the result, or have been likely to do so. If the witness had testified, along the lines indicated by MacLaren, this might have explained MacLaren's presence at the 86th Street address but it would not have been inconsistent with criminal conduct by MacLaren once he was there.[7]

---

5. Whether he could do this is a question of State procedure only and is plainly not open here.

6. The remedial procedures employed by a State to protect federally guaranteed rights is not only a question of State law but is subject to scrutiny by the federal courts. See Stein v. People of State of

New York, 346 U.S. 156, 172–194, 73 S. Ct. 1077, 97 L.Ed. 1522.

7. A post card was admitted in evidence at the 1952 hearing which allegedly furnished MacLaren with the 86th Street address for the purpose of delivering the message.

But it is not for me to review the evidence. I merely hold that relator was not deprived of any constitutional rights by the 1952 hearing or by the lapse of time between the 1950 and 1952 hearings. Relator has received "due process" from the State of New York. See United States ex rel. Blank v. Jackson, supra.

The writ of habeas corpus heretofore granted is discharged since petitioner's confinement is in all respects lawful.

So ordered.