STATE of Missouri, Respondent,

v.

Franklin L. TETER, Appellant.

No. WD 38240.

Missouri Court of Appeals,
Western District.

March 1, 1988.

Franklin Teter, pro se.

William L. Webster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for respondent.

## ON MOTION TO RECALL MANDATE

### PER CURIAM.

Franklin Teter moves to recall the mandate and vacate the opinion in *State v. Teter*, 724 S.W.2d 538 (Mo.App.1986). He contends his counsel on appeal was ineffective in failing to brief and argue four points which would have produced a different result in the case. For the reasons hereafter stated, we find the claims to be without merit and therefore overrule the motion.

■ It is first appropriate to define the scope of review available in this post-conviction proceeding. Because an appellate court loses jurisdiction of a cause once the mandate issues to the trial court, recall of the mandate may result only under limited circumstances. Generally, it has been held that the action to recall mandate is limited to consideration of the claim that federal constitutional rights have been infringed when the lawyer acting for the accused on appeal has been ineffective by constitutional standards. *See In Interest of A.D.R.*, 603 S.W.2d 575, 578 (Mo. banc 1980). Ineffective assistance of counsel in these terms means that the attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that the accused was prejudiced thereby. *Seales v. State*, 580 S.W.2d 733, 736–37 (Mo. banc 1979).

■ Another claim which may be reached by a motion to recall mandate occurs when it is contended that the decision directly conflicts with a decision of the United States Supreme Court relative to rights of a criminal defendant. *State v. Thompson*, 659 S.W.2d 766, 769 (Mo. banc 1983) (Higgins and Donnelly, JJ., concurring; Blackmar, J., concurring in result). Both concepts, ineffective assistance of counsel on appeal and contravention of a federal constitutional right as declared by the Supreme Court, are involved, albeit inferentially, in this case.

Turning now to the specific claims, Teter's motion is presented pro se and it has therefore been approached with some liberality as to its allegations, addressing the contentions within the framework of our authority under a motion to recall mandate. In his first two points, Teter argues that it was error not to grant him a new trial because of influence brought to bear on the jurors through improper contact with the state's witnesses and because evidence of a previous crime was erroneously introduced. To the extent those points may be considered, it is only upon an implicit claim that appellate counsel was ineffective for failure to brief and argue the contentions. Reference to the opinion in this case, however, discloses that both points were in fact raised and considered. Thus, no claim of ineffective assistance on these can be made. We summarily reject those two points as facially without merit.

■ Teter next contends that the evidence was insufficient to support his conviction for first degree assault because there was no proof the victim suffered or was threatened with serious physical injury. Unlike the two previous points, this claim was not considered on the original appeal. The contention then is reviewable only in the context of whether a reasonably competent attorney would have presented the allegation of error and, most importantly in this case, whether Teter was prejudiced by failure of his appellate counsel to raise the issue. If the contention lacks any

colorable merit, then Teter has not sustained his burden to prove prejudice.

The facts in evidence in the case showed that the victim of the assault was kicked in the head by Teter with a resulting fracture of the victim's cheekbone and a "blowout" fracture around the left eye. The consequence of the injury was a potential for diminished vision or even blindness in the eye. Serious physical injury was amply proven. Even had the point now advanced been asserted on appeal, it would not have affected the outcome in the case. The contention that counsel was ineffective fails because there was no prejudice to Teter.

The last claim is more difficult to resolve. Teter contends that his Fifth Amendment protection against twice being put in jeopardy for the same offense was violated when, because of the charge in this case, he was not only sentenced to a term of imprisonment but he was also subjected to an added term of confinement upon revocation of his parole from a sentence imposed on a prior conviction. His argument is that the single act of assault upon the victim, Kevin Crookshanks, resulted in dual punishments. Implicit in the argument is the assumption that Teter, but for the second felony conviction, would not have been required to serve the remainder of his prior sentence. For purposes of discussion, we also indulge that assumption.

This claim comes within the second area of review in a motion to recall mandate, that is, the argument that Teter's rights under the Fifth Amendment as declared by the United States Supreme Court have been abridged by the decision in this case. To support his claim, Teter cites *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed. 2d 346 (1975).

In *Breed*, the accused was a juvenile alleged to have committed an armed robbery. Evidence was taken on the facts of the case in the juvenile court and Breed was ordered detained for a dispositional hearing. At the second stage of the proceeding, the court found Breed not amenable to juvenile court treatment and remanded him to the superior court where a felony charge was filed. The Supreme Court held the felony prosecution to constitute double jeopardy because guilt was in issue at the first juvenile court hearing and confinement followed.

The distinguishing feature of *Breed* which makes it inapplicable to support Teter's claim is that in *Breed*, there was only one offense. Here, the punishment is the consequence of a second crime.

Missouri case authority on the subject is sparse. In *State v. Abbott*, 654 S.W.2d 260, 272 (Mo.App.1983), the court stated: "An adult on parole or probation, who commits a new crime, may have his parole or probation revoked, and also be punished for the new crime." On closer examination, however, the authorities *Abbott* cites do not entirely support that statement and are arguably distinguishable. Moreover, *Abbott* involved the revocation of the defendant's placement in aftercare supervision under the jurisdiction of the juvenile court which, by definition, is not classified as criminal in nature. Thus, the statement, "An adult on parole or probation" brands what follows as dicta in a case of a juvenile offender.

*Abbott* cites and relies on *United States ex rel. MacLaren v. Denno*, 173 F.Supp. 237 (S.D.N.Y.), aff'd, 272 F.2d 191 (2d Cir. 1959), cert. denied, 363 U.S. 814, 80 S.Ct. 1252, 4 L.Ed.2d 1155 (1960), and *Gillis v. Swenson*, 495 S.W.2d 658 (Mo. banc 1973), and several state cases. Neither *MacLaren* nor *Gillis* actually reached the precise question which *Abbott* proposes to answer in the quoted statement above regarding an adult on parole or probation.

In *MacLaren*, the defendant had pleaded guilty to a burglary in 1948 and he was placed on probation. In 1950, he was arrested and charged with another burglary. In consequence of that arrest, his probation was revoked. The second burglary charge was thereafter dismissed, apparently because the sentence to be served in the first case was 10 to 20 years and another prosecution may have been regarded as superfluous. *MacLaren* brought federal habeas, contending among other theories that his revocation hearing did not afford due

process in that it was not the equivalent of a plenary trial, a claimed requisite to revocation in view of the subsequent dismissal of the second burglary charge.

In the foregoing context, the district judge stated: "A probationer who commits criminal acts is liable for the consequences of such acts both by indictment and conviction for the crime, and by having his probation revoked. The two are not mutually exclusive nor does one bar the other." *MacLaren,* 173 F.Supp. at 241. The contention by *MacLaren,* as can be seen, however, was not based on double jeopardy, but on due process. The observation by the court, quoted above, was essentially gratuitous because the decision was merely that the revocation hearings (there were in fact two) complied with procedural due process. The case is of dubious value as precedent for the quotation in *Abbott.*

*Gillis v. Swenson, supra,* is also a questionable authority. Gillis was convicted of stealing and was placed on probation. Some three years later, Gillis pleaded guilty to robbery and he was sentenced to a term of five years with credit against that sentence for time served in jail while awaiting disposition of the case. Thereafter, his probation in the stealing case was revoked and sentence in that case was ordered executed. No credit on that sentence was given for the above described jail time which actually coincided with time on probation. The substantive complaint Gillis lodged was that he did not receive credit on his former sentence, in which he had been given probation, for the jail time in like manner as was credited to his second sentence. The court summarily rejected the claim. It scarcely stands as precedent for the statement in *Abbott* quoted earlier.

The pertinent inquiry, however, is whether Teter's claim under the Fifth Amendment is actually a constitutional right recognized by the United States Supreme Court. Research suggests that although that court has not directly spoken to the question, the claim would not be sustained.

By a footnote in *Ralston v. Robinson,* 454 U.S. 201, 220 n. 14, 102 S.Ct. 233, 245 n. 14, 70 L.Ed.2d 345 (1981), Justice Marshall wrote: "After all, the imposition of confinement when an offender violates his term of probation has never been considered to raise a serious double jeopardy problem." As authority for this statement, the note cites *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). It is in the latter case that the basis for discounting any Fifth Amendment implications in revocation of parole is found.

DiFrancesco was convicted of federal racketeering offenses and was sentenced as a dangerous special offender under 18 U.S.C.S. § 3575. The government appealed, as it is entitled to do under the Organized Crime Control Act, contending the sentence was too lenient. The court of appeals, second circuit, dismissed the appeal on double jeopardy grounds. The Supreme Court held that the Fifth Amendment has never been held to grant a criminal defendant the right to know at any specific moment what the exact limit of his punishment may be. *DiFrancesco,* 449 U.S. at 137, 101 S.Ct. at 437. That being so, the statute granting the government a right to appeal a dangerous special offender sentence does not infringe a constitutional right of the convicted felon.

From this reasoning, if a parolee is returned to custody, even though the cause of revocation be a charge or conviction of a subsequent crime, there is no Fifth Amendment implication because parolee status is not a constitutionally protected right under the Fifth Amendment. The absence of a right under the Fifth Amendment for a criminal defendant to know the limit of his punishment necessarily precludes any claim to a similar right associated with continuation of parole.

Where the courts of other states have considered this issue, the decisions have uniformly rejected a double jeopardy claim. *State v. Meeker,* 143 Ariz. 256, 693 P.2d 911 (banc 1984); *People v. Newell,* 105 Ill.App.3d 330, 61 Ill.Dec. 196, 434 N.E.2d 349 (1982); *People v. Montanye,* 95 A.D.2d 959, 464 N.Y.S.2d 292 (1983); *Gundy v. Pennsylvania Board of Probation and Parole,* 82 Pa.Commw. 618, 478 A.2d 139

(1984); *Adams v. Circuit Court of Randolph County,* 317 S.E.2d 808 (W.Va.1984). For the above reasons, we conclude Teter's motion to recall mandate fails to demonstrate that appellate counsel was ineffective or that Teter suffered prejudice or that the decision as rendered abridges any constitutional right of a criminal defendant as declared by the United States Supreme Court.

The motion to recall mandate is overruled.