STATE of Missouri, Respondent,

v.

Christopher GRIDDINE, Appellant.

No. WD 51804.

Missouri Court of Appeals,
Western District.

Feb. 13, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 2002.

Application for Transfer Denied
June 25, 2002.

Kent E. Gipson, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BRECKENRIDGE, P.J.,
SMART and HARDWICK, JJ.

**ON MOTION TO RECALL MANDATE**

PATRICIA BRECKENRIDGE, Judge.

A jury convicted Christopher Griddine of forcible rape, § 560.030, RSMo Supp. 1992, and the trial court sentenced Mr. Griddine as a prior offender to 18 years in prison. This court affirmed Mr. Griddine's conviction and sentence in *State v. Griddine*, 950 S.W.2d 330 (Mo.App.1997). Mr. Griddine now asks this court to recall its mandate and vacate its opinion because he claims that his trial counsel, Freddie Lawrence Warren, had an actual conflict of interest while representing him. This court finds that Mr. Warren did, in fact, have an actual conflict of interest when he represented Mr. Griddine, and this actual conflict of interest adversely affected Mr. Warren's performance and caused Mr. Griddine to suffer prejudice. Therefore, this court grants Mr. Griddine's motion to recall mandate, vacates its opinion, and remands the case to the circuit court for resentencing.

**Factual and Procedural Background**

■ The Supreme Court appointed a special master in this case, who heard evidence and made findings of fact and conclusions of law. When an appellate court appoints a special master pursuant to Rule 68.03, the master's findings, conclusions and recommendations are to be accorded "the weight and deference given to trial courts in court-tried cases, in light of the master's opportunity to view and judge the credibility of witnesses." *State ex rel. Busch by Whitson v. Busch*, 776 S.W.2d 374, 377 (Mo. banc 1989).

The facts, in the light most favorable to the special master's report, were that shortly after Mr. Griddine was arrested for forcible rape, he retained Mr. Warren to represent him. Mr. Griddine and Mr. Warren agreed that Mr. Warren would represent Mr. Griddine throughout the trial and in any post-trial motions. Mr. Griddine was tried by a jury and, on May 25, 1995, the jury convicted him of forcible rape. On September 28, 1995, the court sentenced Mr. Griddine, as a prior offender, to a term of eighteen years in prison.

Mr. Warren filed a notice of appeal of Mr. Griddine's conviction and sentence in October 1995. While the direct appeal was pending, Mr. Griddine contacted Mr. Warren to ask him about filing a Rule 29.15 motion. According to Mr. Griddine, another inmate had advised him that he should file a "Form 40"[1] in the circuit court to raise claims of ineffective assistance of counsel. Specifically, the inmate told Mr. Griddine that he thought Mr. Warren was ineffective for not testing the State's DNA evidence, and that Mr. Griddine should tell Mr. Warren to file the Form 40 on Mr. Griddine's behalf.

In December 1995, Mr. Griddine called Mr. Warren and said that he "had been doing a little law work" on his case, and that another inmate who was helping him told him that Mr. Warren should file a Form 40 on his behalf. When Mr. Griddine told Mr. Warren that Mr. Warren should file the Form 40, Mr. Warren immediately became hostile, and told Mr. Griddine, "You shouldn't be in there talking to those jailhouse lawyers. They don't know anything. If they did, they wouldn't be in there. And the only thing you're going to do is hurt your case, and you're going to be in there for a longer period of time." When Mr. Griddine again told Mr. Warren that the other inmate told him to have Mr. Warren file the Form 40, Mr. Warren responded by telling Mr. Griddine, "You shouldn't listen to him. Listen to me and everything's going to be all right, and

---

1. Form 40 is the form that is used to file a Rule 29.15 motion.

I'm going to get you out of there." Mr Warren also told Mr. Griddine, "Don't worry about it. I'm going to take care of you. I'm going to take care of you, and you don't need to file that, and I'm not going to file that for you."

Mr. Warren did not tell Mr. Griddine that he (Mr. Warren) could not file a Form 40 alleging ineffective assistance of counsel on Mr. Griddine's behalf, or that Mr. Griddine should obtain different counsel to file a Form 40 alleging ineffective assistance of counsel. Because of Mr. Warren's hostile reaction, Mr. Griddine did not mention filing the Form 40 to Mr. Warren again.

Under the rules governing post-conviction motions in effect at the time, Mr. Griddine had thirty days after the filing of the transcript in his direct appeal to file a Rule 29.15 motion. Rule 29.15(b) (1995).[2] Mr. Griddine filed a timely motion for direct appeal, and he filed the transcript for the direct appeal on June 25, 1996. Therefore, July 25, 1996, was the deadline for him to file a Rule 29.15 motion. Relying on Mr. Warren's advice, however, Mr. Griddine did not file a Rule 29.15 motion. On August 26, 1997, this court affirmed Mr. Griddine's conviction in his direct appeal. *Griddine*, 950 S.W.2d at 330.

Mr. Griddine subsequently filed this motion to recall mandate. The Supreme Court appointed a special master to hear evidence and make findings of fact and conclusions of law on the issues of (1) whether Mr. Warren told Mr. Griddine not to file a Form 40 and, specifically, whether Mr. Griddine was credible in claiming that Mr. Warren told him not to listen to the "jailhouse lawyers" who told him to file

one; and (2) whether Mr. Griddine still had time to file the Form 40 when Mr. Warren advised him not to do so. Following a hearing during which Mr. Griddine and his father testified, and the State presented no contradictory evidence, the special master found that Mr. Griddine's account of his conversation with Mr. Warren concerning the Form 40 was credible.

### Motion to Recall Mandate Granted

■ This court loses jurisdiction over a case after it issues its mandate to the circuit court. *State v. Taylor*, 1 S.W.3d 610, 611 (Mo.App.1999). This court can, however, recall the mandate "under limited circumstances." *Id.* Prior to January 1, 1996, one of these circumstances was when the defendant's attorney on appeal was " 'ineffective by constitutional standards.' " *Id.* (quoting *State v. Teter*, 747 S.W.2d 307, 308 (Mo.App.1988)). The current version of Rule 29.15 provides that the proper procedure for raising ineffective assistance of appellate counsel is in a Rule 29.15 motion, and not in a motion to recall mandate. *Id.* at 611 n. 2. The current version, however, applies only to those persons sentenced on or after January 1, 1996. Rule 29.15(m). Since Mr. Griddine was sentenced on September 28, 1995, a motion to recall mandate is the appropriate vehicle in which to raise his ineffective assistance of appellate counsel claim. *See Taylor*, 1 S.W.3d at 611 n. 1.

■ To prevail on a claim of ineffective assistance of counsel, Mr. Griddine must meet the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under

---

**2.** Rule 29.15 was amended on January 1, 1996, and Missouri no longer follows the consolidated post-conviction/direct appeal procedure. The pre–1996 version of Rule 29.15 continues to apply in certain cases however, as the current Rule 29.15(m) provides that

"[i]f sentence is pronounced prior to January 1, 1996, postconviction relief shall continue to be governed by the provisions of Rule 29.15 in effect on the date the motion was filed or December 31, 1995, whichever is earlier."

*Strickland,* Mr. Griddine must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would in a similar situation, and that he was prejudiced by that failure. *Id.* at 687, 104 S.Ct. at 2064. This court will presume a defendant is prejudiced if the defendant's attorney " 'actively represented conflicting interests' " and " 'that an actual conflict of interest adversely affected his lawyer's performance.' " *Taylor,* 1 S.W.3d at 611 (quoting *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067) (citation omitted). "To prove an actual conflict of interest, a defendant must show that his trial attorney either acted or failed to act in [a] way that was detrimental to the defendant's interest and was advantageous to a person whose interest conflicted with the defendant's." *Id.* at 611–12. Where trial counsel represents a defendant in both a direct appeal and in a post-conviction motion alleging ineffective assistance of counsel, an inherent conflict of interest arises. *Id.* at 612.

The facts of *Taylor* are strikingly similar to the facts in this case. Mr. Taylor's trial counsel represented Mr. Taylor on direct appeal. *Id.* Mr. Taylor's counsel advised Mr. Taylor not to file a Rule 29.15 motion. *Id.* He also told Mr. Taylor that all of the issues that could be raised in the Rule 29.15 motion would be raised in the direct appeal. *Id.* at 611.

This court found that, in advising Mr. Taylor not to file a Rule 29.15, Mr. Taylor's counsel had an actual conflict of interest, because he "was caught between

his obligation to do his best for [Mr.] Taylor and a desire to protect his own reputation and financial interests." *Id.* at 612. Moreover, this court found that his counsel's actual conflict of interest adversely affected his counsel's performance, because but for his counsel's advice not to file a Rule 29.15 motion, Mr. Taylor "would have been able to file a timely Rule 29.15 motion and to obtain appellate review of his ineffective assistance of counsel claims." *Id.* Since Mr. Taylor established that his counsel's actual conflict of interest adversely affected his counsel's performance, this court presumed Mr. Taylor suffered prejudice. *Id.* (quoting statement from *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), that this court refuses " 'to indulge in nice calculations as to the amount of prejudice' attributable to the conflict," because the conflict itself establishes ineffective assistance of counsel). Thus, this court granted Mr. Taylor's motion to recall the mandate, vacated its previous opinion, and remanded to the circuit court for resentencing. *Id.*

■ Here, as *Taylor,* Mr. Warren represented Mr. Griddine on direct appeal. Mr. Griddine told Mr. Warren to file a Rule 29.15 motion.[3] Mr. Warren advised Mr. Griddine that he (Mr. Warren) was not going to file a Rule 29.15 motion, and that Mr. Griddine did not need to file a Rule 29.15 motion either. Also, Mr. Warren told Mr. Griddine that filing a Rule 29.15 would only hurt his case, and cause

---

3. The State argues that this case is distinguishable from *Taylor* because Mr. Taylor told his counsel his purpose for filing the Rule 29.15 motion was to challenge his counsel's effectiveness, and Mr. Griddine testified in the hearing before the special master that he never told Mr. Warren that his purpose for filing the Form 40 was to challenge Mr. Warren's effectiveness. Thus, the State argues that Mr.

Warren was unaware that Mr. Griddine wanted to challenge his ineffectiveness, so a conflict of interest never arose. A reasonable inference from the undisputed evidence of Mr. Warren's hostile reaction to Mr. Griddine's request to file the Form 40, however, is that Mr. Warren was fully aware that Mr. Griddine desired to challenge Mr. Warren's effectiveness.

him to be incarcerated for a longer period of time.

The State argues that the evidence shows that Mr. Warren never advised Mr. Griddine not to file a Rule 29.15 motion. Rather, the State argues, the evidence was that Mr. Warren told Mr. Griddine simply that he (Mr. Warren) would not file one. In making this argument, the State overlooks Mr. Griddine's testimony that one of the things Mr. Warren said when Mr. Griddine asked him to file the Rule 29.15 motion was, "[Y]ou [i.e., Mr. Griddine] don't need to file that." Also, by telling Mr. Griddine that filing a Rule 29.15 motion would only hurt his case and cause him to stay incarcerated longer, Mr. Warren was clearly advising him not to file a Rule 29.15 motion.

Mr. Griddine heeded his attorney's advice and never filed a Rule 29.15 motion. This advice prevented Mr. Griddine from litigating the ineffectiveness of Mr. Warren's representation. But for Mr Warren's advice, Mr. Griddine would have been able to file a timely Rule 29.15 motion, as Mr. Griddine contacted Mr. Warren about filing a Rule 29.15 motion in December 1995, and the deadline for Mr. Griddine to file his Rule 29.15 motion was July 25, 1996.

Mr. Griddine has established Mr. Warren had an actual conflict of interest that adversely affected his performance, because, as in *Taylor*, his direct appeal counsel advised him not to file a Rule 29.15 motion. Thus, this court presumes Mr. Griddine suffered prejudice. *Id.* This court, therefore, recalls its mandate in *Griddine*, 950 S.W.2d 330, vacates its previous opinion and remands to the circuit court for resentencing.

Mr. Griddine raises additional claims of ineffective assistance of trial counsel in his motion to recall mandate. These claims would be better addressed in appellate and post-conviction proceedings following Mr. Griddine's resentencing. Mr. Griddine also requests that this court grant him 943 days of credit toward his sentence because he claims his appellate counsel was ineffective for failing to surrender him on his appeal bond after his probation was revoked and he was delivered to prison on another case because of this forcible rape conviction. The relief Mr. Griddine seeks is not available in a motion to recall mandate proceeding. This court has jurisdiction only to recall its mandate, *Taylor*, 1 S.W.3d at 611, and it has done so.

Motion to recall the mandate in *Griddine*, 950 S.W.2d 330, is granted, the opinion is vacated, and the cause is remanded to the circuit court for resentencing.

All concur.